## CRIMINAL COURT OF BALTIMORE CITY.

Filed June 23, 1902.

STATE
VS.
JOHN K. MESSERSMITH.

*Robert M. McLane* and *Edgar A. Poe* for the State.

*Edgar H. Gans* and *W. Calvin Chesnut* for traverser.

RITCHIE, J.—

In the exercise of its judgment in respect to the order of proof, the State opened its case by offering to prove by the witness, Douglas H. Thomas, a certain confession alleged to have been made by the traverser, to the effect that he had fraudulently altered the dates of certain bills of lading, on which he had obtained sundry loans from the Merchants' National Bank, and that in every instance but one he had long before received the cotton covered by them. This alleged confession having been extrajudicial, the testimony in respect to it was admitted on the condition that it should be followed up by some additional evidence tending to prove the *corpus delicti.*

The State having rested its case, the traverser has filed two motions; the first of which asks the court to strike out the evidence of the witness Douglas H. Thomas, on the ground that the State has failed to follow it up with any evidence tending to show that the traverser had obtained money from the

Merchants' National Bank as alleged in the indictment. The second motion asks the court to strike out certain evidence of the witness Holmes Thomas, on the ground that the facts testified to by him do not constitute the offence of obtaining money as alleged in the indictment.

The State urges the court not to entertain these motions, on the ground that they are equivalent to a demurrer to the evidence, and that, the jury under our constitution being the judges of law as well as of fact in the trial of criminal cases, it is not within the province of the court to pass on the law of the crime, or the legal effect of the evidence. This as a general proposition is true, and equally so although the court, as in this case, may be sitting both as court and jury, because, when the court is so sitting, its province and powers as a court, as well as the rights of the traverser, are just the same as when the case is being tried by a jury.

But while the jury are the judges of the law as well as of fact, the court is the exclusive judge of the admissibility of the evidence, and in the trial of cases the court is frequently called on to admit evidence, the relevancy of which is not apparent at the time, or which is insufficient of itself, on condition that it be followed by other evidence showing its relevancy, or supplying the insufficiency.

The difficulty here arises, not from the usual practice, but from the fact that under the circumstances of this case, the court in determining whether the testimony of the witness, Douglas H. Thomas has been duly followed up or not, is called on to determine *the law of the crime*—that is, to say whether certain facts constitute the crime charged or not.

There is evidence tending to show that the traverser by false pretence obtained a credit at the Merchants' Bank, and that he afterwards obtained money by reason of this credit.

Having been indicted for obtaining money, the question is, do the facts tend to show as matter of law that he did obtain *money* by false pretence or do they show that he thus obtained only a *credit*, and that the obtention of the money was free from the taint of false pretence? If the traverser thus obtained a credit only, then the testimony of the witness in question

has not been followed up by any evidence tending to prove the crime alleged.

It seems to me that, in view of the manner in which this question is raised, it comes within the recognized province of the court to determine the admissibility of the evidence, and that the fact, that in passing upon it, the court must incidentally construe the law of the crime, does not prohibit or relieve the court from deciding it.

In fact, in every ruling the court makes on the admissibility of evidence in the trial of a criminal case, the judge must have in contemplation the law of the crime and what facts constitute it, and make his rulings in reference thereto. And so upon a demurrer to an indictment the court is frequently required to determine whether the facts alleged on the face of the indictment are sufficient in contemplation of law to constitute the crime charged, while on a motion for a new trial, the court will pass on the law and set aside the verdict if the jury has mistaken or misapplied it.

The question here is different from that in Bloomer vs. State, 48 Md. 521. In that case a good deal of the evidence was admitted by the court on condition that it should be duly followed up, and the court afterwards determined whether it had been or not. In addition to this the traverser of his own motion attempted to reserve a general exception to all the evidence, with the right to move its exclusion from the jury, and at the close of the case moved the court to exclude it all as being legally insufficient to support the indictment. The motion was overruled because it was the province of the jury to pass on the legal effect of the evidence in the case. But the evidence had not been admitted provisionally by the court, and, as stated by the Court of Appeals, the motion was not based on the inadmissibility of the evidence, but on its alleged insufficiency to prove the crime charged. Ridgely's case, 75 Md. 510, on this point, is like Bloomer's.

But, while entertaining these motions, I will overrule the second, which relates to the testimony of Holmes Thomas, upon the ground that the testimony of this witness was not admitted subject to exception, and will do so without passing on any question raised by it; and, in ruling on the motion to

strike out the testimony of Douglas H. Thomas, I will confine myself strictly to the question, whether or not it has been followed by any testimony legally tending to show that the traverser has obtained money by false pretence, as charged in the indictment. I will not discuss the testimony in detail, nor will I express any opinion upon the weight of it in any respect.

It appears from the evidence that by means of thirty-eight fraudulent bills of lading which, from time to time, during the period of about one year, the Merchants' Bank was induced to accept from the traverser, the bank has been defrauded of more than $100,000, but as the State has elected to stand upon the transaction connected with the one purporting to be dated October 21, 1901, the motion will, of course, be considered in reference to that one only.

The evidence tends to show that on October 24, 1901, the traverser, by the discount of his note, negotiated a loan for $2,812 on the faith of the fraudulent bill referred to as collateral security; that the amount of this loan was not then paid over in money to the traverser, but was entered to his credit in his account in the ledger of the bank, and entered in his pass book as a deposit; and that at least about $1,500 of this sum was paid out by the bank on the checks of the traverser.

The contention on behalf of the traverser is, that the only thing obtained by the false pretence was *the credit in his account*, and that, the operation of the false pretence having exhausted itself by the obtention of the credit, the money drawn out by reason of the credit thus secured, was not money obtained by false pretence. Does the evidence then show that nothing was obtained by the false pretence except the credit in account; or does it tend to show that *money* was obtained thereby, and that the obtention first of the credit was only an intermediate step towards the obtention of the money?

The term, "credit in account," has relation to the crime of false pretence according to the sense in which it is used. When a debtor by some false pretence induces his creditor to give him a credit in his account, and thus secures a reduction of his indebtedness, of course no money passes, nor is it intended that any shall pass,

and the debtor cannot be said to have obtained money, or to have contemplated its obtention, by his false pretence.

Again, there are cases when credit in account means that a sum of money has been entered to the credit of a party, which it is intended shall be paid over to him, or be held subject to his order. Such is the credit in account which is made when one has negotiated a loan at a bank. The mere obtention of even such a credit as this by false pretence is, however, not obtaining money. It contemplates the payment of money, but no money has yet passed, and it may be that none will pass. It is only when money has been obtained by means of such a credit that the question now considered arises.

Most of the authorities cited on behalf of the traverser refer to credits in account whereby a reduction of an existing indebtedness was secured, or are cases in which the false pretence was so remote in the chain of circumstances that it bore no legal relation to the obtention of the money. The traverser has cited only two authorities which have any bearing on the case of a credit in account which contemplated the payment over of the passing of money.

The first of these is Rex vs. Wavell, 1 Moody C. C. R. 224. In this case it was understood that Wavell might at any time overdraw his account to a sum not exceeding £200; he had frequently exceded this amount, and at the time in question had overdrawn to the extent of £400, and had been notified that he must reduce the amount overdrawn. Having nevertheless drawn an additional check for £70, he was notified by his bankers that it would not be paid unless he first gave them some money in reduction of the amount he then owed, and he thereupon promised to give them a good bill, and in pursuance thereof sent them a draft for £200 drawn at two months on a party upon whom he had no right to draw, and which was never accepted or paid. Because of the receipt of this draft, and the reduction thereby of the amount overdrawn, the check in question was paid, and Wavell was allowed to continue to check, even after his bankers knew that the draft had not been accepted, until his debt was increased to about £1,100.

The opinion of the judges was "that the prisoner could not be said to have obtained any specific sum on the bill; all that was obtained was credit in account."

Wavell's case is distinguished from this by the fact that, while his draft did improve his credit, it was given, not to be cashed or drawn against, but to reduce his then existing indebtedness. The case is cited in the reports and by text writers as belonging to the line of cases where the thing obtained was simply a credit on account, or in the settlement of accounts, where no money passed or was intended to pass, as distinguished from a credit which contemplates the payment of money, and entitles the party who gets the credit to demand the money.

If Wavell's case decides anything more than that the credit given was merely a credit on his account, by way of reducing his debt, then it is in conflict with Regina vs. Eagleton, 33 Eng. L. & Eq. 540, which is the other case in this line cited by the traverser. This is a much later case than Wavell's, and was exhaustively considered. The facts were these: A baker named Eagleton had contracted with the guardians of the parish to deliver loaves of bread of a certain weight to the poor. Tickets were distributed to the poor by the relieving officer, and on presentation to the baker of these tickets they received their bread, but it was of less than the required weight. The baker made weekly returns of these tickets so received to the relieving officer, who thereupon gave him credit in his account at the contract price of loaves of the required weight, according to the tickets returned. Though the baker thus got his credits, he was not entitled to receive the money until some time later.

The fraud consisted in his giving light weight, and the return of the tickets as vouchers for loaves of the required weight, was a representation that they were of such weight, and constituted the false pretence by which the credits were obtained.

The scheme of the baker was detected before any money had been paid, and he was indicted both for fraud and for attempting to obtain money by false pretences. The counts on fraud were held to be not good, because, no false weights having been used, the fraud was only a private one. One defence to the second charge was that the baker had obtained only credits in his account. It was held by all the judges that a credit is not equivalent to money, and that the obtention of these credits was not obtaining money, but it was further held that the baker, by so obtaining these credits, was guilty of an attempt to obtain money by false pretences, and that, if the money had been obtained on these credits, the offence would have been consummated. This case thus covers the chief question argued on these motions.

I take the law to be, and we need not look beyond this case of Eagleton for authority, that when a credit has been obtained by false pretence, and the obtention of the credit is immediately connected with an attempt to obtain money, the party so obtaining the credit is guilty of an attempt to obtain money by false pretence; and if the purpose has been consummated by the obtention of the money, he is then guilty of obtaining it by false pretence.

At this stage of the case, when only the evidence of the State has been submitted, I cannot assume that any fact has been fully established. But if, for illustration, we suppose such a state of facts as the State claims to have proved, then, if I am wrong in my statement of the law and the traverser is right, we are confronted with this condition: The act of obtaining the credit, an act by which the bank is not injured, not yet having parted with any money, is *criminal*, while the act of drawing out the money on such credit, the act which consummates the purpose of defrauding the bank and secures possession of its money, *is not a violation of the law.*

The cases of Wavell and Eagleton, as well as others, are cited in 2 Wharton's Cr. L., Sec. 1198, and the statement of the law there made is that, merely obtaining credit by false pretence is not within the statute, though the defendant may be convicted of an attempt to obtain money, "but when the money or goods ultimately pass on the credit so obtained, the statutory offence is consummated." See also 2 Bish. New Co. L., Sec. 483.

The obtention of money on a credit secured by a false pretence being within the statute, and there being evidence tending to show that money was so ob-

244

tained in this case, there remains only a word or two to be said on the point of whether or not the traverser obtained it. The traverser contends that, while the bank may have thus parted with its money, *he* did not obtain it. The proceeds of the loan in question, so far as obtained, were drawn out on checks. The State claims that at least two or three of these checks were paid to the traverser, though the most of them were paid to others, but in my judgment it is immaterial whether the checks were paid to him, or to third persons on his order.

It is not necessary that the money should have come into his actual personal possession. It is enough if it was held subject to his order, and by his order and for his benefit was paid to some one else. There is evidence to show that the money in question was paid according to the wish, on the order and for the benefit of the traverser.

Rex vs. Sans Garrett, 6 Cox Cr. C. 265-6.

2 Whart., Sec. 1202.

There being evidence *aliunde* the alleged confession legally tending to show that the traverser obtained money from the Merchants' National Bank as charged in the indictment, the motion to strike out the testimony of Douglas H. Thomas is overruled, and the motion to strike out the testimony of Holmes Thomas is overruled for the reason heretofore stated.