AIMEE SAUNDERS, Respondent, *v.* AGRICULTURAL INSURANCE COMPANY OF WATERTOWN, NEW YORK, Appellant, Impleaded with Another.

EVIDENCE — IDENTITY OF BUILDING BURNED WITH BUILDING DESCRIBED IN POLICY OF FIRE INSURANCE   In an action to recover a loss upon a policy of fire insurance, in which the identity of the building insured is disputed, where the insured has testified that upon the receipt of the policy she read it; that she intended to have the building which was burned insured, and always supposed it was, and she has been permitted to give all the reasons for her belief and the facts that tended to disclose her intention, the rejection in evidence of a former policy in another company, which she sent to the insurer to furnish information and as a guide to it in writing the policy in suit, and which tended to show that she had always insured the building burned as a dwelling house, and not as a " barn occupied by a tenant," as described in the new policy, a building answering this description being situated on the other side of the road, is reversible error, since it is admissible to show that she knew or ought to have known that such description could not have covered the dwelling, and it is also admissible, for the purposes of cross-examination, since, if the facts disclosed by the rejected paper had been given to the jury, it might not have found, as it did, that she really believed that the dwelling was insured.

*Saunders* v. *Agricultural Ins. Co.*, 39 App. Div. 631, reversed.

(Argued April 19, 1901; decided June 4, 1901.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered April 12, 1899, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*A. H. Sawyer* for appellant. The trial court erred in excluding the record of the Greenwich policy which was offered in evidence. (*Sanders* v. *Cooper*, 115 N. Y. 279.)

*George Richards* and *Thomas McAdam* for respondent.

O'BRIEN, J.    This was an action upon a policy of insurance on a farm building in Pennsylvania, and the loss, if any, was payable to the plaintiff, as mortgagee.    The defense to the action was that the building burned was not insured or covered by the terms of the policy.    Only one building is covered by the terms of the policy, and that is described as a barn occupied by a tenant.    The policy also covers the hay and grain in this barn, as well as the wagonhouse, wagons and sleighs in the barn and the carriages, harness and two horses, the total insurance being $1,800, $500 of which was upon the barn.    The barns and buildings which contained the personal property were so connected together that they were practically, and for the purpose of giving effect to the insurance, one barn, though they were not, strictly speaking, one building, but were apparently constructed at different times and all connected together so that for all practical purposes they constituted a single building.    The insurance clearly covered a building which contained hay, grain, wagons, sleighs, carriages, horses and harness, and if they had been destroyed the defendant would clearly have been liable for the loss.    These buildings and their contents were on the south side of a country road and were not burned.    On the opposite or north side of this road there was another building used as a dwelling and that building was burned, and the claim of the plaintiff is that it was the building insured by the terms of the policy. The only issue in the case was whether this building, which was used as a dwelling house and burned, was the building described in the contract as a barn with hay, grain, horses and other farming utensils.    There is no claim in this action that anything was lost by the fire except the dwelling house.    The plaintiff gave proof tending to show that this dwelling house many years before the fire was a granary, and, hence, might now be called a barn, but some time after the year 1876 the owner of the farm fitted up the granary as a dwelling, covered it with clapboards and put in new floors and arranged it in such a way that a family could live in it, the house which had been occupied as such before that time having been burned.

The building as fitted up in which the family lived had two chimneys, and there was a temporary addition connected with it in which was a stove, the pipe from which passed out through a board roof, and, as the defendant claims, the building was in such a condition as not to be a proper subject for insurance, and that it was not insured but rejected as a risk.

Although this was an action at law to recover a loss, the plaintiff was permitted to give such proof as would be admissible in an action in equity to reform the policy. The owner and the plaintiff, as mortgagee, claimed that they supposed that the building destroyed was covered by the terms of the policy and that it was intended to be insured. In addition to the facts already stated proof was given tending to show that at the time of the delivery of the policy threshed grain was kept in the house in barrels or bags to be used either for seed or for the family. There was a small hovel outside of the house, which was covered and at some times in the year, as it was claimed, some hay was kept in it for some temporary purpose. While the action, as stated, was one at law, yet the trial assumed the form of an inquiry whether, notwithstanding the description of the subject of the insurance in the policy, this dwelling house was not intended to be included in the risk. That was the question that was submitted to the jury, and a verdict having been found in favor of the plaintiff the judgment has been unanimously affirmed by the Appellate Division. There seems to have been no objection made based upon the form of the action, and the parties apparently consented to try the issue in the same way as if the plaintiff had made an application for the reformation of the policy.

The issue as tried and submitted to the jury clearly involves the question of the intention of the parties at the time of the execution of the contract and the identity of the building destroyed with the building described in the contract. This inquiry was, in its nature, one of fact, and since the judgment entered upon the verdict has been unanimously affirmed, this court cannot disturb the judgment on the ground that the

verdict was not supported by evidence. The policy provided that the defendant should not be held liable beyond two-thirds of the value of the building destroyed, but the jury rendered a verdict for the whole amount specified in the policy as the risk upon the building, which was $500 and interest. The learned counsel for the defendant contends that this was error since there was no proof in the case to justify the jury in awarding a verdict for more than two-thirds of the amount specified as the risk. But the value of the building was a question for the jury and they had a right to find, if the evidence permitted, that the amount of their verdict represented only two-thirds of the actual loss, and this court has no power to review the question whether the verdict in that respect is supported by the evidence. The only questions before this court are those presented by the exceptions taken by the defendant's counsel at the trial to the exclusion of certain evidence which was offered, and, as is claimed, was material to the issues submitted to the jury. Before reviewing these exceptions it is necessary to get a clear understanding of the facts and circumstances that preceded the delivery of the policy. It appears that prior to the 7th of July, 1888, the buildings upon this farm had been insured in the Greenwich Company of New York. On that day the agent of that company addressed a letter to the owner informing her that they did not desire to renew the insurance on the property, and advising her to place the insurance with the defendant through a local agent in the neighborhood. On the next day the owner, Mrs. Courtois, addressed a letter to the defendant's agent in New York, in which she inclosed the letter from the agent of the Greenwich Company, and also the policy in that company which had expired or was about to expire. In this letter she stated that "the inclosed letter will tell you what I want you to do for us," and that as she was about to go out of town soon she would be unable to call at the office, but that her son, who was on the New York police force, would attend to the matter. She also stated that her husband lived on the place and ran the farm with one of her sons.

and that he would attend to the matter. This letter seems to have been dated from a house in the city of New York and the writer was evidently in the city at the time. In this way she set the agents of the defendant in motion to effect the insurance now in question. It does not appear that she ever met or had any further communication with any of the defendant's agents. Upon the receipt of this letter the defendant's New York agent communicated with the defendant's local agent near this property in Pennsylvania, and requested him to examine the property and if he would recommend a risk to write it up in the usual way. The local agent thereupon proceeded to the farm upon which the building destroyed was situated. He found on the north side of the road the building used as a family dwelling. On the south side, nearly opposite, was a cluster of barns mentioned, in which the farm produce, farming utensils and stock were kept. He wrote out upon one of the defendant's blank forms an application covering the barns on the south side of the road, and while the application contained blanks for dwelling house, furniture, provisions, books, pictures, silverplate, piano and other things, they were not filled. The only property described in the application was a barn with hay and grain, a wagonhouse connected with it, the farming utensils, horses, harness and carriages. On this application was a diagram which exhibited the buildings as the agent found them; a dwelling house on the north side of the road, the barns on the other side. This application was forwarded by the agent to the defendant and was the only knowledge that it had from any source concerning the situation or character of the building insured. While it was in the form of a regular application for insurance the owner's signature appeared to be attached to it by the agent himself, and it does not appear that the owner ever saw it or had any knowledge of its contents, or gave any specific authority for writing it. But this paper, on its face, contained the following statement: "I do not consider the house insurable on account of the chimney in main part and stovepipe in summer kitchen going through board

34

roof. Stovepipe in main part is in very poor condition at present and enters chimney in the bottom." He then stated that the barns were in good condition, but they were at least twenty-five years old; that he knew the husband of the owner and that he thought the insurance on the property was all right so far as moral hazard is concerned. This was the only authority that the defendant had for writing the policy in question and it was the only basis upon which it acted. The dwelling house was destroyed by fire on the 21st day of December, 1889, and that was the only building that was burned.

The learned trial judge charged the jury that the question for them to decide was whether the policy was intended by the parties to cover the building destroyed, and that the plaintiff's case depended upon the question whether the description contained in the policy was understood by the defendant to apply to the building which was burned, although used as a dwelling at the time of the execution of the contract. The question, therefore, was whether the defendant, in writing a policy upon a building described as a barn, intended to insure a dwelling house. The fact that there was a statement that the building insured was occupied by a tenant does not necessarily mean or imply that a tenant was actually residing in it. It might mean that the owner was not, during a considerable part of the year, residing on the farm, but, as was the case, in the city of New York; or it might mean that the farm was in the possession and occupancy of a tenant or some one other than the actual owner. Whatever it may mean we do not think it could be material in the determination of the issue. Inasmuch as the learned trial judge permitted the jury to determine what the defendant's intention was when it wrote the policy in question describing the building to be insured as a barn, all the facts and circumstances surrounding the transaction and upon which the defendant acted in issuing the policy would seem to be material. The plaintiff was permitted to go outside of the terms of the policy and prove by the owner all the facts and circumstances that influenced her mind,

and she claims in a general way that she intended to have the dwelling house insured and always supposed it was and she gave all the reasons for her belief and the facts that tended to disclose her intention. If this proof was competent in behalf of the plaintiff it would seem to be reasonable to assume that the defendant could give in evidence the facts and circumstances which constituted the basis of its action. The situation, as thus disclosed, will enable us to get a clear view of the questions of law raised by the exceptions, which will now be considered :

(1) The defendant offered in evidence the application with the diagram which was sent to the company by its local agent and upon which the policy was issued, with the statement already referred to, describing the dwelling house substantially as a dangerous risk and advising the company not to assume it. This paper was objected to by the learned counsel for the plaintiff as incompetent and excluded by the court, to which ruling the defendant's counsel excepted. If this paper was admissible it certainly was material. It constituted all the information which the defendant had concerning the property which was the subject of the insurance. It would tend to prove that when the defendant wrote a policy upon a building described as a barn it was not intended to cover the dwelling house which its agents represented as not an insurable risk. The ground upon which this paper was excluded was that it did not appear to have been signed or authorized by the owner and that so far as appeared she had no actual connection with it. It may be that upon an issue as to false representations or warranty or the like, this objection could be sustained, but there was no such issue in the case. The fact in dispute was one concerning the intention of the parties, and on that issue it was immaterial whether the application was signed by the agent or by the owner so long as it was the basis of the defendant's action. The plaintiff having proved the intention, purpose and belief of the owner at the time of entering into the contract, it is difficult to see why the defendant should not have been permitted to give proof of like

character.  The learned trial judge admitted the diagram on
this paper, but carefully instructed the jury that they had no
right to consider or examine anything else on it.  The owner
had no more connection with the diagram than she had with
the rest of the paper and if the diagram was admissible it
would seem to follow that the description of the property
contained in the application and the recommendation in regard
to it were equally competent, since they were intended to
inform the defendant as to the real situation and to guide and
influence its action in entering into the contract.  The defend-
ant's right to have this paper and all of its contents submitted
to the jury would seem not only to be founded in reason and
justice but, as I think, is settled by the decisions of this court
on the precise point.

The case of *Sanders* v. *Cooper* (115 N. Y. 279) is identi-
cal with this in all the material facts bearing upon the admis-
sibility of the application in question.  In that case, as in
this, the issue tried was the identity of the building insured.
The issue was whether the building described in the policy
was the millhouse which was burned or the tenant house
which was not burned.  In that case, as in this, the applica-
tion was not signed by the owner but by the defendant's
agent and was objected to on that ground.  The learned trial
judge admitted it, but charged the jury in substance that they
must disregard it as proof unless they found that the owner
authorized it or knew of its contents before the policy was
delivered.  This part of the charge involved the very ground
upon which the application in the case at bar was excluded.
There was an exception to that part of it, which, of course,
presented the precise question here.  In that case, as in this,
the application was the only guide the company had when
writing the insurance and there was a verdict for the plaintiff
affirmed below.  This court unanimously reversed the judg-
ment, and what Judge ANDREWS said in the opinion of the
court ought to solve the question involved in this exception,
as will appear from the following extracts from the opinion :
" The plaintiff, notwithstanding this apparently conclusive

evidence that the house insured was the tenant house and not the millhouse, has recovered for the loss by fire of the millhouse upon certain extrinsic proof submitted to the jury.  *  *  *  The evidence leaves no possible room for question that the company, when it issued the policy, intended to insure the tenant house and not the millhouse. Nor can there be any doubt that the policy describes the tenant house, and not the millhouse, as the subject insured. It is quite impossible to treat this policy as a contract insuring the millhouse if the application and survey are considered in ascertaining the subject of insurance. It is only by rejecting them that the subject is left in any possible doubt. This the trial court permitted the jury to do upon the theory that the representations in the application and diagram were the unauthorized acts of the agent, and were not, therefore, binding upon Landers.  *  *  *  In determining the question whether the policy issued covered the millhouse or the tenant house, the papers on which the company acted were material evidence. In ascertaining to which subject the policy applied, it is immaterial whether the application was made by the authority of the insured or not, or whether it was genuine or forged. There must be a meeting of minds between the parties to a contract before a contract is formed. If the facts show that the company intended to insure the tenant house, and the written contract applies to that house, the plaintiff cannot recover in this action, although he may have intended to procure an insurance on the millhouse, and by the agent's fault the application was made to refer to the tenant house.  *  *  *  I am not aware of any principle in the law of estoppel which prevents the defendant from showing that the contract relates to the tenant house, or which justifies the court in excluding from the consideration of the jury, in the determination of the issue, the application and survey upon which the company acted, because made without the authority of the insured by the company's agent. We are of opinion that the defense that the policy was not upon the millhouse, but was upon the tenant house, was clearly estab-

lished, and that upon this ground a nonsuit should have been granted."

There is hardly a shade of difference between that case and the one at bar. The rule of evidence there stated was not new. It was held long before that in cases where the intention of the insurer is material, as in cases for the reformation of the policy, the application or paper upon the faith of which the policy was issued is admissible.

In *Phœnix F. Ins. Co.* v. *Gurnee* (1 Paige Ch. 278) the chancellor said : " In policies of insurance, the label or written memorandum from which the policy was filled up, is always considered of great importance in determining the nature of the risk and the intention of the parties." And again, in *Dow* v. *Whetten* (8 Wend. 160) the chancellor said that a a paper of this character " may be used in a court of equity, in connection with the evidence, for the purpose of showing the mistake and reforming the policy ; but in a court of law it can be used for no other purpose than that of showing a misrepresentation on the part of the assured."

In this case, notwithstanding the form of the action, the jury reformed the policy by finding that the building insured as a barn was really the dwelling house burned. This may have been a departure from the issue made by the pleadings, but the parties elected to try the case in any form that was possible upon the facts, and since the plaintiff claimed and was awarded all the benefits of a successful application to reform the contract, the rules of evidence applicable to that form of action should have governed the inquiry. The plaintiff, having been permitted to prove all the facts that could be shown in an application to reform the policy, and having by the verdict received all the benefits of a reformation, must now accept all the rules of evidence applicable to that remedy. She sought to recover on the policy, not as it was written nor as it reads, but, as she alleged, it ought to have been written and ought to read. On such an issue every fact or circumstance that influenced the minds of the parties or disclosed their intentions was admissible. The plaintiff had the benefit

of this rule, but the defendant had not; so I think that the paper, with all of its contents, was clearly admissible.

(2) It has already been observed that the only communication that the owner of this property ever sent to the defendant was the letter already referred to inclosing the letter received by her from the agent of the Greenwich Company, and the old policy in that company. The policy so inclosed appeared to have been dated on the 28th of July, 1887. It insured the dwelling house situate on the *north* side of the road for $300, and that, beyond all doubt, is the building that was destroyed, and for which destruction the plaintiff recovered in this action. That policy also insured the barn on the *south* side of the road and contents, with the wagonhouse, for $1,700. None of this property was destroyed by the fire in question, so that the old policy insured the dwelling house on the north side of the road and the barn on the south side with its contents, the barn being described as sixty feet in length and thirty feet in width, with the wagonhouse of different dimensions. The owner did not inform the defendant, when applying for the new policy, what amount of insurance she desired on either the buildings or the personal property, but sent to the agent in New York this old policy as a guide to show what she wanted. On the trial the defendant's counsel offered the Greenwich policy in evidence. It was objected to as incompetent and immaterial, and excluded by the court, to which ruling the defendant's counsel excepted. We think this ruling was error. The paper excluded was one that came from the owner and was received by the defendant's agent. The owner knew its contents and it was intended to furnish information in writing the policy. It tended to prove that the owner had always insured the building burned as a dwelling house and the other as a barn. She testified that she read the policy in suit when received from the defendant's agent and knew its contents, and that she always read her insurance policies. It is fair, then, to assume that she was familiar with the terms of both policies, and when she received and read the new policy sent to her

by the defendant she must have been surprised to find that her dwelling house was described as a barn and that the risk upon it had been increased by the defendant from $300 to $500 without any request on her part for this change in the values, and yet her position in the case was that she intended that the house should be insured and supposed it was. The old policy, if received, would tend to prove that she knew that the building burned was a dwelling house and had always been insured under that description. The old policy was, therefore, admissible to show that both parties to the present contract knew that the building burned was a dwelling house and not a barn. It tended to prove that the owner must have known, upon reading the new policy, that all risk upon the dwelling house had been omitted, and that the insurance was only on the barn and its contents. The paper offered was, therefore, admissible to show that the owner knew, or ought to have known, that the building described in the defendant's policy as a barn could not have covered the dwelling. It was also admissible for the purposes of cross-examination of the owner, who was the principal witness at the trial, and if the facts disclosed by the paper offered had been given to the jury it might not have found, as it did, that the owner really believed that the dwelling was insured, whatever her intention may have been when she communicated by letter with the agent. She could not very well claim that she understood the building described as a barn to be a house when there was such a discrepancy in the old and the new policies as to the description of the subject of insurance.

(3) It appeared at the trial, from the testimony of the defendant's agent in New York, which was not denied or disputed, that when he received the policy in suit from the defendant he transmitted it by mail to the owner of the property, and that he inclosed in the same envelope a letter to her. He stated that he kept no copy of the letter, and the plaintiff's counsel was notified before the trial to produce the original, but it was not produced. The defendant's counsel then offered to prove by secondary evidence the contents of this

letter.  This was objected to by the plaintiff's counsel, and the objection was sustained by the court on the ground that there was no proof that the package, or at least the letter, had been mailed.  The agent testified that he wrote the letter himself and inclosed it with the policy.  Inasmuch as the policy is the very instrument upon which this suit is brought and was produced at the trial, of course the owner received it and must also have received the letter which accompanied it.  At least the jury could have so found, so that the letter which the defendant's agent sent with the policy, since it might have contained an explanation of the reason why the dwelling was not insured, was material.  The defendant's counsel, therefore, made a case which entitled him to prove the contents of the letter by secondary evidence, and hence the ruling of the court was error.

The judgment must be reversed and a new trial granted, costs to abide the event.

BARTLETT, J. (dissenting).  I am unable to agree with the prevailing opinion.  This is an action at law upon a policy of fire insurance; there is no suggestion in the complaint that a reformation of the contract is desired, nor was there at the trial of the action.  The plaintiff has recovered on the policy as it stands.  The record contains an abbreviated statement of the contents of the policy, and discloses a printed list of twenty distinct items, with the dollar sign preceding each one and a space left between this and the balance of the item to fill in the amount insured.  Three of these items as thus printed read, respectively, " On barn No. 1, on barn No. 2, and on barn No. 3."  Three other printed items read : " On hay and grain in barn No. 1, on hay and grain in barn No. 2, and on hay and grain in barn No. 3."  It will thus be seen that the practice indulged in by the defendant under this form of policy is calculated to be very deficient in detailed description and tends to mislead.  The construction of such a policy on its face must be strictly in favor of the insured and against the company.

35

Before considering what buildings were covered by this policy, it is well to revert to the undisputed facts in this case. The decision of the Appellate Division was unanimous, but reference to the facts is necessary in order to understand the legal questions sought to be raised. This action is brought by the mortgagee, who held the policy as security for her loan. The mortgagor and owner of the premises is Sophie Courtois. The premises in question is farm property situated in Palmyra township, Pike county, Pennsylvania. On July 7th, 1888, and at a time when the premises were insured in the Greenwich Insurance Company of the city of New York, Mrs. Courtois received a letter from the agent of that company to the effect that he could not renew the insurance on account of its being situated too far from New York, and advising her to place it with some other agent; he suggested C. Patterson & Son, No. 71 Wall street, New York, agents of the defendant company, as proper persons to represent her, and sent her a copy of the policy of the Greenwich Insurance Company.

On the 9th of July, 1888, Mrs. Courtois addressed to Patterson & Son a letter, inclosing the Greenwich policy and stating that it would tell them what she wanted done. It will be observed that this was more than a year before the policy was issued by the defendant which is involved in this action. The policy took effect July 18th, 1889, and receipt for premium is dated July 23rd, 1889. Mrs. Courtois testified that before this policy was issued she went to Patterson & Son's office, 71 Wall street, in New York, and was told that Patterson was not there, but saw his representative who took notes; she said, "I told him house." She further testifies that at that interview she left the deed of the property as they wished to see it. She further swore: "I told him to insure all the buildings; * * * I did not receive a policy; I went two weeks afterwards and asked if the policy was ready, and about it; they said that the policy was not ready. but I paid the premium that day," etc.

At this point exhibit "D," which is the receipt for the pre-

mium above referred to, was put in evidence and bears date July 23rd, 1889. Mrs. Courtois testified, in substance, without objection, that some years before this insurance was taken out the dwelling house situated on the north side of the highway was burned without insurance; that the grain barn was on the same side of the road with the house that was burned; and the other two barns, the cattle barn and the wagon shop were on the south side of the road. She further stated that they did not rebuild the dwelling house, but finished off some rooms in which to reside in one portion of the grain barn, and continued thereafter, notwithstanding these alterations, to store in the other part of the barn grain and seed to be used for planting and sowing; that no grain was ever stored in the barns or dwellings on the south side of the road. The witness further stated that the living apartments in this barn were occupied by her husband, herself and the man who assisted in working the farm, who seems to be described in the complaint as tenant, but the precise business relations he sustained towards Mrs. Courtois do not appear in detail; he is sometimes spoken of as a tenant and sometimes as a hired man.

Keeping in mind these undisputed facts, in the record without objection, we approach the examination of this policy, which is nothing more than a filling out of certain of the printed items already described. Preceding the item " on barn No. 1 " is filled in $500, and then stamped upon the policy, not printed, are the words " occupied by tenant." Preceding the printed item " On hay and grain in barn No. 1 " is filled in $650. Preceding the printed item " On wagon house " is filled in $200. Preceding the printed item " On wagons and sleighs while in said barn " is filled in $100. Preceding the printed item " On carriages and harness therein " is filled in $150. Preceding the printed item " Two horses, not to exceed $100 on each horse," is filled in $200, making a total of $1,800.

It seems to me very apparent the statement that only one building is covered by the terms of this policy is erroneous on

the face thereof, and the situation is rendered perfectly clear by Mrs. Courtois' evidence received without objection. No force whatever has been given to the words "occupied by tenant." The fact confronting the agent in drawing the policy was the rather unusual situation of a grain barn having rooms fitted off for a residence and still being used in part for storing grain. The first printed item in this policy reads "On dwelling house." To have described the structure subject to this dual use as a dwelling house would have been inaccurate, and, consequently, to fill it in as a barn occupied by tenant, while it might have been more definite, is quite sufficient, in construing this policy strictly in favor of the insured.

The prevailing opinion assumes that Mrs. Courtois never met the representatives of the company, and that this insurance is based solely on correspondence and the application drawn by one agent of the company and sent to another agent thereof unsigned by the insured and without her knowledge or consent. The evidence already referred to shows that this position is erroneous; that the insured did meet the representative of the company; that she afterwards called again and paid the premium on the policy and received a receipt therefor; that at her first interview defendant's agent was instructed to insure all the buildings.

The important question is whether this application was admissible in evidence as offered by the defendant. The trial court held that it was not and the Appellate Division has affirmed this ruling. It is stated in the prevailing opinion in this court that it is entirely immaterial whether the insured signed this application or had any knowledge of it. The case of *Sanders* v. *Cooper* (115 N. Y. 279) is cited as on all fours with the case at bar, and as deciding that an application unsigned by the insured was competent evidence. In that case, as in this, the action was at law upon the policy and two defenses were pleaded: *First*, that the building burned was not the building mentioned in the application and survey and insured by the policy; and, *second*, that there was undis-

closed insurance. It is only the first defense that is now material.

The defendant, to establish the first defense, relied upon the following facts : (1) The policy insured property described in the application and survey bearing even date with it, and which was referred to " *as forming a part of the policy* ; " (2) the application accurately described a tenant house ; (3) the survey on back of application showed the tenant house and other buildings, and under the tenant house was the word " risk ; " (4) the millhouse (the house burned) was a half mile away from tenant house and corresponded in no respect (except height) with the building described in the application and survey ; (5) the application and survey were forwarded to the company and the policy issued thereon.

The court held that, reading the policy and the application, which was made a part of it, there was " no possible room for question that the company, when it issued the policy, intended to insure the tenant house and not the millhouse. * * * It is quite impossible to treat this policy as a contract insuring the millhouse if the application and survey are considered in ascertaining the subject of insurance."

It was in view of the fact that the policy, on which the plaintiff sought to recover, made the application a part thereof that the court said it was " immaterial whether the application was made by the authority of the insured or not, or whether it was genuine or forged."

This was clearly so ; the plaintiff had, as matter of law, accepted the application as containing the only description of the property, and sued thereon. Can it be properly or accurately said that the case cited is authority for the admission of an application in evidence in the case at bar, which was not a part of the policy, which was drawn by one of the defendant's agents and sent to another of the defendant's agents, after the verbal application was made, which was never heard of by the insured until produced at the trial ? Surely if such a paper is competent the insured is at the mercy of the company. Furthermore, in the case cited, the insured,

confronted by a policy which contained a clear and accurate description of the building insured, sought to prove that it was intended to cover a building different in description and located half a mile distant from the subject of insurance. It was in view of this situation that the court said that the evidence of plaintiff, "while it might tend to establish a case for the reformation of the contract, would be inadmissible to sustain an action to enforce the contract as written, as though it applied to the building intended to be covered, but not described in the policy." Here again we have a clear distinction between the case cited and the one before us. In the latter case the plaintiff stands on the description in the policy, to wit: "$500 on barn No. 1 (stamped), occupied by tenant."

The prevailing opinion states that "the fact that there was a statement that the building insured was occupied by a tenant does not necessarily mean or imply that a tenant was actually residing in it." It was for that very reason that the trial judge said to the jury, when referring to these words "occupied by tenant," stamped on the policy, "you may take into consideration the fact that the defendant used its own words in writing the description in the policy of the property and that the plaintiff is entitled to a construction of these words most favorable to her." No exception was taken to this charge; the jury found those words did describe the building destroyed, and the Appellate Division have unanimously affirmed the judgment entered on the verdict.

There was no effort in this case, as in the case cited, to depart from the plain language of the contract and make the policy apply to property not described. The precise reverse was true and the recovery was on the face of the policy as written.

Judge ANDREWS alludes, incidentally, in the case cited (115 N. Y. at p. 285) to the rule that governs in the case at bar; he says: "The subject of the insurance is to be ascertained from the description in the policy and such extrinsic evidence as may be necessary to identify the property described."

This was the object of plaintiff's evidence, to identify the

property described. It was shown that the insured told the agent to insure all the buildings, gave him her old policy as a guide, which did cover all the buildings.

It was also shown that the grain barn on the north side of the road was changed, in part, into a dwelling house and that the tenant or hired man did occupy it. All this evidence satisfied the jury as to the identity of the property and made the contract clear on its face. This evidence was not condemned in the case cited, but, on the contrary, was specially approved.

The case cited has no application to the case before us in my judgment, and I am of opinion that the trial judge properly refused to admit the application in evidence.

There are two other exceptions which are urged in support of reversal. It is insisted that the Greenwich policy, heretofore alluded to, should have been admitted in evidence. If anybody was prejudiced by its rejection it was the plaintiff, as that policy, the abstract of which is printed in the record, shows that it insured, among others, the building occupied by the tenant on the north side of the road. It is a little difficult to understand why the plaintiff's attorney should have objected to the admission of this policy, but its rejection does not call for a reversal of the judgment for two reasons — the defendant was not prejudiced by its exclusion, and it was immaterial as pointed out by the Appellate Division. The plaintiff must stand on the policy in suit.

The other exception relates to the exclusion of secondary evidence as to the contents of a letter alleged to have been written by the agent in New York to Mrs. Courtois. He testified that he caused to be mailed to her the policy in suit and that he inclosed therein a certain letter, the contents of which are not disclosed. Plaintiff's counsel was notified to produce the original of this letter on the trial. The plaintiff denied the existence of any such letter and objected to secondary evidence of its contents. The court sustained the objection on the ground that there was no proof of the mailing of any such letter. The argument is made that because

Mrs. Courtois was in possession of the policy she must have received the letter. Mrs. Courtois was absolutely powerless to meet this situation, except to say that she never received any such letter, and the burden rested upon the defendant to show that such a letter was mailed. Unless strict proof is exacted in such a case, the door would be open to the admission of manufactured evidence.

I am of opinion that the recovery below is right and the judgment appealed from should be affirmed, with costs.

Parker, Ch. J. (and Martin and Vann, JJ., on second ground in opinion), concur with O'Brien, J.; Landon, J., concurs with Bartlett, J.; Cullen, J., not sitting.

Judgment reversed, etc.