## JOSEPH S. BEARD *vs.* THE STATE OF MARYLAND.

*Disorderly house—Evidence—Constitutional law.*

Under an indictment for maintaining a disorderly house by permitting lewd persons to frequent it, evidence of the general reputation of the women for lewdness who resort there, and that they do so in company with men, is admissible, as also evidence of specific acts of unchastity committed by some of the women elsewhere.

A bar room and dance hall, with music, kept for the purpose and with the intent of bringing together and entertaining prostitutes, and men desirous of their company, if such persons habitually assemble there to drink and dance together, is a disorderly house, although it is quietly kept and no conspicuous improprieties are permitted inside.

The provision of the Constitution, Article 15, section 5, declaring that "in the trial of all criminal cases the jury shall be the judges of law as well as of fact," does not inhibit the Court from instructing the jury on the law when they unanimously request it to be done.

APPEAL from the Criminal Court of Baltimore.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., STONE, MILLER, IRVING, BRYAN, and McSHERRY, J.

*R. Stockett Mathews,* for the appellant.

*Wm. Pinkney Whyte, Attorney-General,* for the appellee.

ALVEY, C. J., delivered the opinion of the Court.

The traverser in this case was indicted for keeping a disorderly house, and upon trial by a jury, was convicted of the offence.

The indictment consists of a single count. It charges that the traverser unlawfully and wilfully did *keep and maintain* "a certain *common, ill-governed, and disorderly house* there situate; and in the said house, for his own. lucre and gain, certain persons of *evil name and fame, and of dishonest conversation, to frequent and come together, &c., unlawfully and wilfully did cause and procure;* and the said persons in the said house, at unlawful times, as well in the night as in the day, then, &c., to be and remain, *drinking, tippling,* cursing, swearing, quarrelling, *and otherwise misbehaving themselves, unlawfully and wilfully did permit, &c.;* to the great damage and common nuisance of all the liege inhabitants of the State there inhabiting, &c. The indictment is in the ordinary common law form, and accurately describes the offence, with some unnecessary degree of particularity. *Rex vs. Higginson,* 2 *Burr.,* 1232; 2 *Chitt. Cr. Law,* 673. The offence is that of a common nuisance, and it is necessary that the indictment should contain facts to show that a common nuisance has been created or permitted. This is done by allegation of such facts as show that the traverser maintains, promotes, or continues, what is noisome and offensive, or annoying and vexatious, or plainly hurtful to the public, or is a public outrage against common decency or common morality, or which tends plainly and directly to the corruption of the morals, honesty, and good habits of the people; the same being without authority or justification of law. 3 *Greenl. Ev., sec.* 184, and the authorities there cited.

Such being the general principles upon the subject, it is in the light of and with reference to those principles that the questions raised in this case must be decided.

There were three bills of exception taken by the traverser. The first and second exceptions present questions as to the admissibility of evidence. These questions are, whether it was competent to the prosecution

to prove by witnesses the general reputation or character of the women for lewdness, who frequented the house kept by the traverser; and to prove that such women frequented the house in company with men; and whether it was competent to the prosecution to prove by witnesses specific acts of lewdness by some of the women who resorted to the traverser's house, as showing what their habit and vocation really were, though such acts of lewdness did not occur on the premises of the traverser. We can perceive no possible objection to the admissibility of such evidence. Evidence of the general reputation of the house was inadmissible; but the general reputation of those who frequented it was admissible for the purpose of characterising the house and showing the object of their visits. *Henson vs. State*, 62 *Md.*, 233, 235; *Herzinger vs. State*, 70 *Md.*, 278. And as the object of the inquiry was to show the disreputable and degraded character of the women who found admission to the house of the traverser, it was unquestionably competent to show it either by proof of general reputation, or by proof of particular acts of lewdness, to the knowledge of witnesses; and it could make no difference where such acts occurred. We are therefore of opinion that the Court below was clearly right in allowing all the facts and circumstances stated in these exceptions to go to the jury, to be considered by them. But all possible objection to the evidence excepted to, if there could have been a question in regard to it, would seem to have been entirely removed, by the testimony introduced by the traverser himself in the subsequent progress of the trial. He proved by his own witnesses, that the women who frequented his house were street walkers; that their general reputation was bad, and that some of them the witness had met in houses of prostitution. With this evidence before the jury, introduced by the traverser himself, it is not perceived

upon what ground he could ask the reversal of the rulings upon the evidence offered by the State, to which he excepted.

We come now to the third exception, and the questions presented by that exception are, whether it be competent to the Judge presiding at the trial of a criminal case to give an advisory instruction to the jury, when requested so to do; and if it be competent so to instruct, whether the instruction given in this case was correct or not. These questions have been argued by counsel with much zeal and ability, and doubtless they are of great importance in the correct and faithful administration of the criminal law of the State.

It appears that, after the case had been fully argued to the jury by counsel, the jury retired to consider of their verdict, and after being out many hours, they were brought into Court and questioned as to whether they had agreed. They stated through their foreman that they had not agreed upon a verdict, and that there was no likelihood of their being able to agree. Whereupon one of the jurors suggested that he thought it probable that a verdict could be had, if the jury were instructed as to the law governing the case. To this the Judge replied that he would instruct the jury, if they unanimously requested him to do so; and directed the foreman to ascertain whether it was the wish of all the jurors that they should be instructed. The foreman, after consulting the panel, announced that the jury were unanimous in their desire to be instructed as to the law. But the counsel for the traverser objected, and earnestly protested against such instruction being given, and insisted that the jury were the exclusive judges of the law as well as of the facts in criminal cases, and therefore the Court ought not to interfere. However, the Court, notwithstanding the protest of counsel, reduced to writing and read to the jury the following instruction:

Beard *vs.* State.

"If you find from the evidence that the traverser kept a bar-room and dance-hall with music, for the purpose and with the intent of bringing together and entertaining prostitutes and men desirous of their company, and that such persons habitually assembled there to drink and dance together, then you *may* find said estabment a disorderly house within the meaning of the indictment, even although you may also believe that the house was quietly kept, and no conspicuous improprieties were permitted inside. The jury being the judges of the law as well as fact, this charge is to be understood as advisory only of what the law is."

In the first place, it is argued that the Judge had no right to give the instruction against the protest of the traverser ; and, in the second place, that the instruction was erroneous in principle and not within the terms of the indictment, and therefore misleading in its effect upon the jury.

1. The Constitution of the State, Art. 15, sec. 5, is very explicit in declaring that "in the trial of all criminal cases, the jury shall be the judges of law as well as of fact." But it has been held by our predecessors that this provision of the Constitution is merely declaratory, and did not alter the pre-existing law regulating the powers of the Court and jury in the trial of criminal cases. *Franklin vs. The State,* 12 *Md.*, 236. Both before and since the constitutional declaration upon the subject, it was and has been the practice of Judges in some parts of the State, to decline to give instructions to the jury in criminal cases under any circumstances ; while in other parts of the State it has been the practice for the Judges to give advisory instructions when requested so to do. It seems to have been regarded as entirely a matter of discretion with the Judge, there being no *positive* duty requiring him to pursue the one course or the other. Whenever, however, the Judge has thought it

proper to instruct, it has always been deemed necessary that he should be careful to put the instruction in an advisory form, so that the jury be left entirely free to find their verdict in accordance with their own judgment of the law, as well as the facts. The instruction, when given, goes to the jury simply as a means of enlightenment, and not as a binding and positive rule for their government, as it does in civil cases. The Judge, therefore, cannot, by any instruction given in a criminal case, bind the jury as to the definition of the crime, or as to the legal effect of the evidence before them. He can only bind and conclude the jury as to what evidence shall be considered by them, he being the exclusive judge of what facts or circumstances are admissible for consideration. The practice of instructing the jury, within the limitations and under the restrictions just stated, has received the sanction of this Court upon more than one occasion, and such practice must now be regarded as fully authorized. *Wheeler vs. State,* 42 *Md.,* 563, 569; *Broll vs. State,* 45 *Md.,* 356 ; *Bloomer vs. State,* 48 *Md.,* 521, 538 ; *Forwood vs. State,* 49 *Md.,* 537 ; *Swann vs. State,* 64 *Md.,* 425. And such practice is founded in the soundest practical reason and good sense. For though the juries are made judges of the law, they are unlearned, and not infrequently composed, in part at least, of persons wholly uninstructed as to the laws under which they live. When sworn upon the panel it becomes their duty to decide the case according to the established rules of law of the State, and not according to any capricious rules of their own ; and it must be supposed that they are always desirous of performing their duty, and making their verdicts conform to law. To enable them to accomplish that object, no proper light should be withheld from them. In the argument of the case before them by counsel, text-books, no matter of what authority, or whether of any authority at all ; reported decisions of

Beard *vs.* State.

all grades of Courts, from the highest to the lowest, and no matter where made; are read to the jury, with the gloss of counsel, to enforce certain theories; and the jury are required to discriminate and decide, upon the authorities cited, as to what is the law in their own State, which they are sworn to administer. In such state of doubt and perplexity, is it not reasonable and proper that they should have the *advisory aid* of the Judge who is supposed to know what the law of the State really is, and who has the ultimate power of revising and setting aside their verdict, if they should mistake and misapply the law to the injury of the accused? It would seem that there could be no room for a diversity of opinion upon this question; and no case could more fully illustrate the propriety of the practice than the present. If the instruction given be erroneous, though in a mere advisory form, it may be made the subject of an exception, to be corrected on appeal. *Swann vs. State, supra*.

2. The remaining question is, whether there was error in the instruction given. As we have seen, it was advisory only, and in no way binding on the jury. And we perceive nothing in its terms to make it erroneous. If in fact the place was kept by the traverser "for the purpose and with the intent of *bringing together and entertaining prostitutes and men desirous of their company*, and that *such persons habitually assembled there to drink and dance together*," the jury might well find the house to be disorderly within the meaning of the indictment, and according to settled principles of law. It does not require, in a case like the present, that there should be acts violative of the peace of the neighborhood, or boisterous disturbances, or open acts of lewdness shown, in order to constitute the place a disorderly house. The habitual assembling there of lewd women, and men desirous of their company, to drink and dance together, must neces-

sarily be hurtful to the public, and tend to scandalise the neighborhood. It is an outrage against common decency and common morality, and could have no other effect than the corruption of the morals, honesty and good habits of the people. And that constitutes the place a nuisance. 3 *Greenl. Ev., sec.* 184. The common law form of an indictment specially adapted to a case like this, simply charges that the party accused did keep and maintain a certain common ill-governed and disorderly house for public dancing and music; and in said house, for his own lucre and gain, did cause and procure divers persons, as well men as women of evil name and fame, and of dishonest conversation, to frequent and come together, to the great damage and common nuisance of the public, &c. 2 *Chitt. Cr. Law,* 673. The crime consists in the keeping of the house as a place of habitual or common resort of people of evil name and fame, and of dishonest conversation, there to consort together; thus affording opportunities for and temptations to the indulgence of their bad habits and passions, to the evil example and scandal of the neighborhood. The indictment in this case fully embraces the facts which were required to be found by the jury under the instruction given by the Court; and therefore there is no ground for the contention that the instruction is not supported by the indictment. *Cheek vs. Commonwealth,* 79 *Ken.,* 359, 362; *Thatcher vs. State,* 48 *Ark.,* 60; *Commonwealth vs. Cardoze,* 119 *Mass.,* 210.

Finding no error in the rulings of the Court below, those rulings will be affirmed, and the cause remanded.

*Rulings affirmed, and*
*cause remanded.*

(Decided 12th June, 1889.)