# ROBT. A. L. DICK *vs*. THE STATE OF MARYLAND.

*Evidence Admitted Without Objection—Motion to Strike Out Testimony in Criminal Case Amounting to Instruction to the Jury—Improper Remarks of State's Attorney in Criminal Case—Attorney at Law an Agent Within Statute Relating to Embezzlement by Agents.*

An objection to incompetent evidence must not be made at the time when it is offered if the ground of the objection be then ascertainable. An exception to its admission cannot be taken at a subsequent stage of the trial.

An attorney at law, who had collected a claim for money placed in his hands and failed to pay over the same to his client, was indicted for embezzlement, under Code, Art. 27, sec. 103, which provides that any agent or clerk who shall fraudulently embezzle any money taken into possession by him for his employer shall be deemed to have feloniously stolen the same. At the close of the evidence of the prosecution, which showed that the defendant had failed to account for the money collected by him for his client, the defendant moved to strike out the testimony as being insufficient to show that he was the agent of his client within the meaning of the word *agent* as used in the statute. *Held*, that this motion was properly overruled because it was in effect a motion to instruct the jury to render a verdict for the defendant, and in this State, where the jury in a criminal case are the judges of the law as well as of the facts, they are entitled to determine the legal effect and sufficiency of the evidence, while the Court determines the question of its admissibility.

Upon the trial of an indictment charging an attorney at law with embezzlement for having failed to account for money collected by him for his client, under a statute providing that any agent who shall fraudulently embezzle any money received by him for his employer shall be deemed to have feloniously stolen the same, the State's Attorney said to the jury in the course of his argument, "that the construction of the statute as to whether the defendant was an agent within its meaning, was something they had nothing to do with inasmuch as the Court had already determined that question in ruling on the testimony." The defendant objected to this statement and the trial Court said, "It is true the jury are the judges of the law as well as the facts in this case, I have decided in passing upon the admissibility of the testimony that in my opinion an attorney is an agent under the statute but of course, the jury is not compelled to accept my opinion and has a perfect right to disagree with me." *Held*, that it was improper for the State's Attorney to tell the jury that they had nothing to do with the question whether

the defendant was an agent or not, as the Court had decided the matter, and since this statement was not disapproved by the Court or withdrawn by the State's Attorney, the jury may have been influenced in their finding by that declaration and it constitutes reversible error.

An attorney at law is an agent within the meaning of the Code, Art. 27, sec. 103, which provides that any cashier, servant or agent who shall fraudulently embezzle any money received by him for his employer, shall be deemed to have feloniously stolen the same.

*Decided December 3rd, 1907.*

*Supplemental Decision, January 9th, 1908.*

Appeal from the Circuit Court for Allegany County (R. R. HENDERSON, J.)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER and BURKE, JJ.

*Arch. A. Young* (with whom were *R. T. Semmes* and *F. Brooke Whiting* on the brief), for the appellant.

*William S. Bryan, Jr., Attorney General,* for the appellant, submitted the case on his brief.

PEARCE, J., delivered the opinion of the Court.

The traverser in this case was indicted in the Circuit Court for Allegany County for embezzlement, was tried before a jury, convicted and sentenced to confinement in the Maryland House of Correction for one year.

Section 103 of Article 27 of the Code declares that any "cashier, servant, agent or clerk to any person, or to any body corporate, who shall fraudulently embezzle any money * * * received or taken into possession by him, for or in the name, or on the account of his master or employer, shall be deemed to have feloniously stolen the same from his master or employer."

The indictment contained two counts; the first charged that the traverser "being then and there employed in the capacity of agent for the Weiderman Brewing Company, a corporation

under the laws of the State Kentucky, did by virtue of his said agency and by virtue of his said employment as agent, and whilst he was the agent of the said Weiderman Brewing Company as aforesaid, and so employed as aforesaid, receive and take into his possession the amount of one hundred and twenty-five dollars current money, and of the value of one hundred and twenty-five dollars current money, for, and in the name of, and on the account of the said Weiderman Brewing Company, his employer and principal, and the said money then and there  *  *  *  fraudulently and feloniously did embezzle;" And this count then proceeded to charge that the accused so feloniously did steal, take, and carry away said money, the property of the said Weiderman Brewing Company.

The second connt charged the larceny of said money by the accused. He demurred to the first count and this demurrer was overruled, when he demurred to the whole indictment and this demurrer was also overruled.

It is not apparent upon what ground these demurrers were interposed. The indictment was in the usual form, and as the defendant's counsel did not allude to the demurrers, either in his brief, or in his argument, we may conclude they were abandoned.

During the course of the trial three exceptions were taken, as follows: The first witness called by the State, Marshall Windom, testified thus:

"Question. Where do you live?

Answer. In Lonaconing.

Question. What is your business?

Answer. Manager for the George Weiderman Brewing Company.

Question. Who is the George Weiderman Brewing Company?

Answer. A corporation of Newport, Kentucky.

Question. How long has it been in existence?

Answer. I do not know how long.

Question. Who is the president?

Answer. Charles Weiderman.

Question. Who is the secretary ?
Answer. C. J. Wagener.
Question. Have they a branch in Lonaconing?
Answer. Yes, sir.
Question. Who has charge of that branch ?
Answer. I have charge of that branch."

The defendant at the close of these questions and answers objected to all the foregoing testimony as tending to show the existence of the corporation as such, and that the witness Windom, was its manager, and the objection being overruled, the first exception was taken to that action of the Court.

The best evidence; doubtless, of the existence of a corporation, would be the production of its charter, or certificate of incorporation, though secondary evidence of general reputation is admissible for that purpose. But the evidence under consideration here was given without any objection, and so went to the jury, and the objection as made came too late.

In *Dent* v. *Hancock*, 5 Gill, 127, the Court said: "Whether the objections taken to the testimony were well founded or not, it is deemed unnecessary to inquire because they were not made in due time. It is the duty of counsel if aware of the objections to its admissibility, to object to the testimony at the time it is offered to be given, or if unapprised of such objections at the time the evidence had gone to the jury, he must raise his objections within a reasonable time thereafter." Here the third question put to Mr. Windom was notice to the defendant that the answer would result in the admission of the very character of proof which he claims to be insufficient, and it was his duty then to object to the *question* and so to exclude the answer or secure an exception. This he did not do, but permitted the State to complete its proof before an objection was interposed. The rule in *Hancock* v. *Dent* has been consistly followed in this State in numerous decisions, among which are *Bell* v. *State*, 57 Md. 120; *Lamb* v. *Taylor*, 67 Md. 93; *Slingluff v. Builders Supply Co.*, 89 Md. 562, and we must approve that ruling in this case.

The State then further proved by Mr. Windom that the de-

fendant was an attorney at law, engaged in the collection of claims, and that by the authority of the Weiderman Brewing Company, he placed in the hands of the defendant for collection for that company, a claim held by it against E. C. Mace, a former manager of the company in Lonaconing, amounting to $125. Mr. Mace proved that he paid this claim in full to the defendant, and Mr. Murphy, a Justice of the Peace at Lonaconing, who issued the warrant upon this charge of embezzlement proved that the defendant at the hearing before him admitted he had received the money and had not accounted for it, and that he had a charge of $30 for legal services to the Brewing Company.

The State then rested, and the defendant moved to strike out all the testimony in the case as being insufficient to show that the defendant was the agent of the Brewing Company, and received the money as such, and contended that the defendant as attorney, was not acting as an agent within the meaning of sec. 107 of Art. 27 of the Code. The Court overruled this motion and refused to strike out the testimony, and the second exception was taken to that ruling.

The appellant's argument is that although the ordinary meaning of the word "Agent," is one who serves some other person as his principal, that cannot be the meaning of the word as used in this statute, since the Legislature has provided for the punishment of the offence of embezzlement by eleven different sections covering different classes of persons in different capacities, and in none of these sections is an attorney at law specifically mentioned, while there is nothing in the testimony showing any other relation than that of attorney and client between the appellant and the Brewing Company. But it will be seen that section 103, under which this indictment is drawn, makes general provision for the punishment of those who embezzle money or effects delivered to, or received by, them for or on account of their master or employer and that the other ten sections make special provision for cases where the relation of master and employer does not exist. Thus section 100 relates to the stealing, using or altering of a will, deed,

or patent. Section 101 to the secretion of a will. Section
104 to breaches of trust by executors, administrators, guard-
ians, &c. Section 105 to persons engaged in transportation
of merchandise, who dispose of or pledge such merchandise;
and so on in the other sections dealing with this offence. So
that it comes at last to the simple question whether an attor-
ney at law is an agent for his client.

In *Commonwealth* v. *Libbey*, 11 Metcalf, 66, the Massachu-
setts Court had before it an indictment of a person employed
by the publishers of a newspaper to collect their bills on com-
mission and the language of the statute was substantially the
same as that of our own. The lower Court instructed the
jury that the defendant was the servant or agent of the pub-
lishers, and he was convicted, but this was reversed on ap-
peal, the Court saying, "In the case of a domestic servant,
and, to some extent, in the case of a special agency, the right
of property and the possession continue in the principal, and
a disposal of the property would be a violation of the trust,
and an act of embezzlement. But cases of commission mer-
chants, auctioneers, and attorneys authorized to collect de-
mands stand upon a different footing; and a failure to pay
over the balance due to their employers, upon their collec-
tions, will not, under the ordinary circumstances attending
such agency, subject them to the heavy penalties consequent
upon a conviction of the crime of embezzlement."

In *People* v. *Converse*, 74 Mich. 478, it was held by the Su-
preme Court of that State, under a statute similar in language
to ours, that if an attorney collects money for his client, he,
in so doing acts as the agent of his client as well as his attor-
ney; and if in either case, after making the collection, he ap-
propriates the money to his own use, with the intention of de-
priving the owner of the same, he is guilty, of the crime of
embezzlement, although there was another section of the stat-
ute which specifically provided for the failure of attorneys to pay
over collections made, the offence being made a misdemeanor,
and not a felony and on that ground, JUDGE CAMPBELL dis-
sented from the judgment of the Court. These two cases

illustrate the divergence of judicial opinion upon the question involved in this case, but it would be of no avail to enter into a discussion of their comparative weight and authority, or to express our own views, because, as expressed in the brief of the Attorney General, the motion to strike out the testimony of the State was in legal effect a demurrer to the evidence and an attempt to obtain an instruction from the Court to the jury to render a verdict for the defendant, and it is well settled that this cannot be done in Maryland, where the jury in criminal cases are the judges of the law, and of the legal effect and legal sufficiency of the evidence, and the Court only determines the admissibility of the evidence.

In *Franklin* v. *State*, 12 Md. 246, JUDGE LEGRAND said, "The jury in a criminal case were not bound by the interpretation of the Court of the meaning of a law, but were free to construe and apply it according to their own judgments." In *Broll* v. *State*, 45 Md. 360, the Court said, "No Court in this State can be required by the counsel or jury, to give instructions either upon the law *or the legal effect of the evidence given at the trial.*"

In *Bloomer* v. *State*, 48 Md. 538 and 539, the defendant moved to exclude from the jury all the evidence in the case upon which the State relied to support the three counts of the indictment, because they said the evidence is not sufficient in law to support the indictment. This motion was denied and on appeal the Court said, "The motion of the appellant requires the Court to pronounce and decide upon the legal effect of the evidence. It affirms the evidence should be excluded from the jury because it is not sufficient in law to support such counts. It is not based upon the inadmissibility of the evidence or its want of relevancy, but proposes to the Court to say virtually the traversers shall be discharged without day, and the jury withdrawn." The judgment therefore was affirmed.

In *Beard* v. *The State*, 71 Md. 280, JUDGE ALVEY, said, "The Judge cannot bind the jury as to the definition of the crime, or as to the legal effect of the evidence before them.

He can only bind and conclude the jury as to what evidence shall be considered by them."

In *Ridgely and Melvin* v. *State*, 75 Md. 512, the traversers, at the close of the States's case offered a prayer "that the State has offered no legally sufficient evidence to support the indictment and their verdict must be for the traversers." This was refused, and on appeal the ruling was affirmed, the Court saying, "No Court in this State, whatever may be the rule elsewhere, can be required by counsel or jury in criminal cases to give instructions, either upon the law of the crime or the legal effect of the evidence. The rejected prayer did not ask the Court to tell the jury that the evidence, or any portion of it, was not admissible for any reason, but after it was all before them without objection, it said to them in effect 'you have heard the evidence offered by the State, and although you are the judges of law as well as of fact, the Court instructs you that, as matter of law, the evidence is not sufficient to support the indictment, and you *must* acquit.' "

But it is needless to cite further authority to show that there was no error in the overruling of the motion to strike out the testimony in this case.

During the argument of the case the State's Attorney stated to the jury "that the construction of the statute, as to whether the defendant was an agent within the meaning of the statute was something they had nothing to do with, inasmuch as the Court had already determined that question in ruling upon the testimony;" to which statement defendant's counsel objected as improper, on the ground that the jury were judges of law as well as fact in criminal cases, and *they* were therefore to determine whether the defendant came within the purview of the statute. In ruling upon this objection, the Court said, "It is true the jury are the judges of the law as well as the facts in this case. I have decided, in passing upon the admissibility of the testimony that in my opinion an attorney is an agent under the statute, but of course the jury is not compelled to accept my opinion in the matter and have a perfect right to disagree with me." To this statement of the

Court the defense objected, and asked the Court to instruct the jury that they were not to pay any attention to the remarks of the Court, which request the Court overruled and the defense excepted both to the statement of the State's Attorney to the jury and to the remarks of the Court in passing upon the objection.

We think it was clearly improper, for the State's Attorney to tell the jury that whether the defendant was an agent within the meaning of the statute was something with which they had nothing to do. It is manifest that if, as we have seen from our own decisions cited, that the Court cannot pronounce and decide upon the legal effect of the evidence and can only *bind and conclude* the jury as to what evidence shall be *considered* by them, the State's Attorney cannot undertake to declare to the jury that the Court had in fact, by admitting the testimony deprived the jury of its constitutional power to construe and interpret the statute and apply it according to their own judgments. It may be apparently anomalous when the Court in passing upon the admissibility of testimony has given *its* interpretation of the meaning of the statute, that the jury should still be free to adopt *its own* interpretation; but this is precisely the anomaly resulting from our system of administering the criminal law and which results whenever the Court instructs the jury in a criminal case, and the verdict which follows is not in accord with the view expressed by the Court; and it is too well settled in this State to require the production of authority, that the Judge may state his own views of the law to the jury, provided he also informs them that his utterance is advisory only, and that they are free to adopt their own independent judgment.

This exception was taken both to the statement made by the State's Attorney and to the remarks of the Court in ruling upon that statement.

In *Weeks on Attorneys*, sec. 114A, it is said that improper remarks of counsel are no ground for a new trial, *if desisted from upon objection made, or when the Court interferes.* And in *People* v. *Mull*, 167 N. Y. 265, where a new trial was granted

on that ground, the Court said, "We do not mean to say that such remarks of counsel are not within the power of the Court to cure either by prompt rebuke or by instructing the jury to disregard them, or better by both methods."

In the case at bar the learned Judge of the lower Court properly and plainly stated to the jury that they were not compelled to accept his opinion of the law, and had a perfect right to disagree with him. He could not have been expected, as requested by defendant, to instruct the jury that they were not to pay any attention to his remarks, because he had a right to address advisory remarks to them, and it was their duty to accept them *as such* and *then* to subject them to the test of their own independent judgment. So far as the remarks of the Judge himself are concerned, we think they sufficiently informed the jury that they were not bound by his interpretation of the statute, though in so advising them he announced that he had decided an attorney was an agent under the statute, and thus emphasized his opinion to that effect. But he did not allude at all to the statement of the State's Attorney, which if an improper one, as we have said it was, should have been disapproved by the Court and the jury directed to allow it no weight, as was expressly held in *Hall* v. *U. S.*, 150 U. S. 81. This was probably because of inadvertence, or possibly the learned Judge did not regard it as improper, but the fact remains that he did not refer to it, and it was not withdrawn by the State's Attorney. Whatever influence it may have had upon the jury remained unaffected by the remarks of the Court. A zealous and efficient State's Attorney naturally possesses a strong influence over jurors desirous of protecting society against such offences, and the declaration of the State's Attorney in this case was well calculated to impress the jury that they were at liberty, to accept his view without regard to their own. In *Esterline* v. *State*, decided by this Court on April 2nd, 1907, and reported in 105 Md. 629, where a similar question was under consideration, it was said, "This remark was objected to as improper and the Court, in the presence of the jury told the State's Attorney that it

was not proper for him to make that statement. The State's officer then apologized for making it and promptly withdrew the objectionable statement. It is not to be presumed that a body of competent and honest men sworn to try the issue of the traverse upon the evidence produced before them, would permit the statement to influence their finding, *after the Court had announced it to be improper, and after it had been withdrawn from their consideration.* \* \* \* *In such cases, if the Court interfere, and counsel promptly withdraw the remark, the error will generally be deemed to be cured."* Stress was there laid upon the disapproval of the statement by the Court, and its prompt withdrawal by counsel. In the present case there was no characterization by the Court of the statement of the counsel, nor any distinct reference to it, and there was no withdrawal of the statement by the State's Attorney. Who can say then that the jury were not influenced in their finding by this declaration of the State's Attorney?

If so influenced the verdict ought not to stand and we feel constrained so to determine.

> *Judgment reversed and cause remanded for a new trial.*

Subsequently the following supplemental opinion of the Court was delivered by Pearce, J.

It has been suggested to us since the opinion in this case was filed, that upon a new trial, if that should result in a conviction, the same question which was raised in this case upon the motion to strike out the testimony of the State as insufficient to show that the defendant was not an agent within the meaning of section 107, of Article 27 of the Code, might again be presented upon a direct exception to the admission of the same testimony in support of the indictment, and that thus two appeals might be required to settle that question. We have never entertained any doubt that the ruling of a trial Court upon the *admissibility of evidence in a criminal case,* was reviewable in this Court, and if we have not already suffi-

ciently expressed or intimated our opinion on the correctness
of the ruling in this case in admitting the testimony which was
subsequently refused to be stricken out, we will now do so,
though without retracting, or modifying our opinion that after
evidence has been admitted by the Court in a criminal case,
the construction of the statute upon which the indictment is
found, and the *legal* effect of the evidence which has been ad-
mitted by the Court in support of the indictment, is *exclusively*
for the jury.

The word "attorney" originally meant merely—agent, or
attorney in fact.

Its secondary or restricted, meaning relates to the repre-
sentation of others in legal actions or demands. An agent
may, or may not, be an attorney at law—or such an attorney
as can represent another in the prosecution of a legal action,
but an attorney at law always, and necessarily, is one who acts
for, or in behalf of another. It would be not only a reproach
to our law makers, but a most illogical and unreasonable con-
clusion to hold that an attorney at law, though as such, a
sworn member of a specially trusted profession, and subject to
be disbarred by the Courts from the practice of his profession
upon proof of unprofessional conduct, yet is immune from
punishment or indictment, if he dishonestly appropriates to
his own uses money belonging to his principal. It is clear we
think that the Legislature intended to embrace in section 110,
under which this indictment was found, all persons who come
within the ordinarily accepted definition of agents, and to pro-
vide by all the other sections of that Article relating to em-
bezzlement, for special cases to which the principle or agency
is not directly applicable, or where the exigencies of modern
business relations require special provision to be made for
special cases.

To assume that the Legislature deliberately selected attor-
neys at law for immunity from the crime of embezzlement be-
cause they are not specially designated by that title, though
unequivocally included in the general classification of agents
would be to impute to our lawmakers a favoritism which could

not be discriminated from corruption, and we have no hesitation in declaring our opinion that attorneys at law are agents within the meaning of sec. 107 of Art. 27, and that the Circuit Court for Allegany County correctly admitted the evidence in question.