WATTS, J.
Respectfully, I dissent. “Wisdom too often never comes, and so one ought not to reject it merely because it comes late.” Henslee v. Union Planters Nat’l Bank & Trust Co., 335 U.S. 595, 600, 69 S.Ct. 290, 93 L.Ed. 259 (1949) (Frankfurter, J., dissenting). I would overrule Unger v. State, 427 Md. 383, *707 411, 48 A.3d 242, 258 (2012); reinstate Stevenson v. State, 289 Md. 167, 178, 423 A.2d 558, 564 (1980), Montgomery v. State, 292 Md. 84, 87-88, 437 A.2d 654, 656 (1981), and State v. Adams, 406 Md. 240, 256, 958 A.2d 295, 305 (2008); and hold that a petitioner for posteonviction relief waives a challenge to “advisory” jury instructions by failing to raise any issue as to the “advisory” jury instructions in a prior proceeding.
Here, we are asked to overrule Unger, 427 Md. at 411, 48 A.3d at 258, whose holding regarding “advisory” jury instructions casually overruled decades’ worth of well-established case law. At its core, this case presents the paradox that the doctrine of stare decisis supports overruling a case.[1] For more than three decades, Stevenson, 289 Md. at 178, 423 A.2d at 564, was the law of Maryland. The bench and bar relied on Stevenson, and justifiably so; this Court reaffirmed Stevenson one year after issuing it, see Montgomery, 292 Md. at 87-88, 437 A.2d at 656, and then once again twenty-eight years after issuing it, see Adams, 406 Md. at 259, 958 A.2d at 307. But then, a mere four years after Adams, in Unger, 427 Md. at 417, 48 A.3d at 261, without valid reason, this Court overruled Adams and decades’ worth of other case law in which we consistently recognized that Article 23 of the Maryland Declaration of Rights and its predecessors mean that, in a criminal case, the jury is the judge of the law of the crime.
In overruling this raft of case law in Unger, this Court struck a blow to stare decisis, rocked lawyers’ and courts’ confidence that this Court would not lightly abandon its precedent, and gave members of the public reason to believe that this Court’s decision-making is based on the views of the individual judges who decide a case, regardless of existing case law. Today, this Court has the opportunity to right these *708 wrongs, restore stare decisis to its proper place, and make clear that, because this Court nonchalantly demolished decades’ worth of case law in Unger, that case represents an aberration that thwarts the doctrine of stare decisis. Unfortunately, the Majority fails to take advantage of this opportunity, and instead reaffirms Unger with barely any analysis, original thought, or consideration of historical context. See Maj. Op. at 700-02, 122 A.3d at 298-300.
Foremost, Unger is disconcerting in light of the circumstance that this Court simply turned parts of the dissent in Adams, 406 Md. at 312-40, 958 A.2d at 339-56 (Eldridge, J., dissenting) into the majority opinion in Unger, 427 Md. at 411, 48 A.3d at 258. As the Honorable Glenn T. Harrell, Jr. pointed out in Unger, 427 Md. at 430 n. 7, 418, 48 A.3d at 270 n. 7, 262 (Harrell, J., dissenting), “more is required, before deviating from stare decisis, than simply re-potting those dissenting views as a Majority opinion here”; “[t]he only thing that appears to have changed in the few intervening years between Adams and [Unger] is the composition of [this] Court.” As Judge Harrell later demonstrated, a dissenting judge must realize that, as of this Court’s issuance of the majority opinion from which the judge dissents, the judge’s views’ opposite — i.e., the majority opinion — becomes the law of Maryland. See Dep’t of Pub. Safety & Corr. Servs. v. Doe, 439 Md. 201, 238, 94 A.3d 791, 813 (2014) (Harrell, J., concurring) (“I did not join the reasoning ... of the plurality of the judges in ... Doe I.... I concur in the judgment of [this] Court’s opinion in the present case, assuming that Doe I was decided correctly. It is, after all, the law of Maryland.”).
Under the well-established framework of stare decisis, it is readily apparent that Unger was clearly wrong and contrary to established principles,[2] not only because this Court lightly cast aside stare decisis in Unger, but also because, in Unger, *709 this Court erroneously reasoned that, in Adams, 406 Md. at 256, 958 A.2d at 305, this Court was wrong in concluding that this Court did not “announce new law” in Stevenson or Montgomery.[3] To adequately explain why this Court did not “announce new law” in Stevenson or Montgomery, a thorough analysis is needed.
In 1776, under English common law, in a criminal case, the trial court decided the law, and the jury applied the law to the facts. See Slansky v. State, 192 Md. 94, 101, 63 A.2d 599, 601 (1949). The English common law principle “was condemned by some of the Colonial statesmen, notably John Adams, who believed that the juries should be entitled to disregard the arbitrary and unjust rulings of the [trial] judges holding office by authority of the” King of England. Id. at 101, 63 A.2d at 601; see also id. at 101, 63 A.2d at 601-02 (“In some of the ... Colonies[,] it was fully understood that the [trial] judges held office not for the purpose of deciding causes, for the jury decided all questions of both law and fact, but merely to preserve order and see that the parties were treated fairly before the jury. This procedure received patriotic justification as increasingly oppressive measures were taken by the *710 royal officials; however, the fact that many of the [trial] judges had not studied law was probably an additional explanation for the procedure.”).
The Constitution of Maryland of 1776 did not expressly indicate whether the jury was the judge of the law in a criminal case. See id. at 104, 63 A.2d at 603. As a result, “opposing views as to the powers of [the] jury in a criminal case[ ] prevailed in different parts of’ Maryland. Franklin v. State, 12 Md. 236, 245 (1858) (LeGrand, C.J., concurring). To secure uniformity of decision, the Constitution of Maryland of 1851 included Article X, Section 5 of the Maryland Declaration of Rights, which stated: “In the trial of all criminal cases, the jury shall be the judges of law as well as fact.” See id. (LeGrand, C.J., concurring) (“[T]o guard in the future against ... conflict, the provision was inserted in the constitution.”).
This Court consistently recognized that Article X, Section 5 and its successors mean that, in a criminal case, the jury is the judge of the “law of the crime;” in other words, the jury applies the law of the crime (e.g., the law against murder) to the facts, and cannot make any other legal determination (e.g., that a statute is unconstitutional). For example, in Franklin, id. at 249, the very first case in which this Court mentioned Article X, Section 5, this Court stated that Article X, Section 5 did not enable the jury in a criminal case to conclude that a statute is unconstitutional. As to that issue, a majority of this Court adopted the concurring opinion of Chief Justice John Carroll LeGrand, id. at 249, who stated that, under Article X, Section 5, “in a criminal case[,] the jury [is] not bound to abide by the interpretation of the [trial] court of the meaning of a law, but [is] free to construe and apply it according to [the jurors’] own judgments”; in other words, instead of having “the right to decide on the constitutionality of an act defining murder, arson[,] or any other crime, [the jurors] had the right to affix their own meaning on the particular law, and to determine for themselves, whether the facts proven brought the [defendant] within that meaning[,]” id. at 246 (LeGrand, C.J., concurring) (emphasis added).
*711 In several cases after Franklin, this Court reaffirmed the principle that Article X, Section 5 and its successors: (1) mean that, in a criminal case, the jury is the judge of the law of the crime; and (2) do not enable the jury to make any other legal determination (e.g., whether a piece of evidence is admissible). See Wheeler v. State, 42 Md. 563, 570 (1875) (“[A]ny instruction given by the [trial cjourt, as to the law of the crime, is but advisory, and in no manner binding upon the jury, except in regard to questions as to what shall be considered as evidence.” (Some emphasis in original)); Bloomer v. State, 48 Md. 521, 540 (1878) (“[I]t was the duty of the [trial cjourt to leave it to the jury to say[ ] whether the evidence was sufficient in law and in fact to prove the [crime] charged.” (Emphasis added)); Beard v. State, 71 Md. 275, 280, 17 A. 1044, 1045 (1889) (“The [trial court] ... cannot, by any instruction given in a criminal case, bind the jury as to the definition of the crime, or as to the legal effect of the evidence before them.” (Emphasis added)); Ridgely v. State, 75 Md. 510, 513, 23 A. 1099, 1100-01 (1892) (same) (quoting Beard, 71 Md. at 280, 17 A. at 1045); Dick v. State, 107 Md. 11, 17, 68 A. 286, 288 (1907) (“[T]he jury in criminal cases are the judges of the law, and of the legal effect and legal sufficiency of the evidence, and the [trial] court ... determines [only] the admissibility of the evidence.” (Emphasis added)); Jessup v. State, 117 Md. 119, 123, 83 A. 140, 142 (1912) (same) (quoting Dick, 107 Md. at 17, 68 A. at 288); Vogel v. State, 163 Md. 267, 274, 162 A. 705, 707-08 (1932) (“The statement in Dick [, 107 Md. at 17, 68 A. at 288], and Beard [, 71 Md. at 280, 17 A. at 1045], that the [trial] court could not bind the jury as to the ‘legal effect of the evidence,’ referred to the effect, in law, of admitted evidence upon the issue of guilt or innocence[.]” (Emphasis and italics added)); Dillon v. State, 277 Md. 571, 581-82, 357 A.2d 360, 367 (1976) (Article X, Section 5 and its successors “ ‘contemplate[ ] that it is within the proper province of the jury to resolve conflicting interpretations of the law and to decide whether the law should be applied in dubious factual situations,’ but ‘it does not confer upon them ... untrammeled discre *712 tion to enact new law or to repeal or ignore clearly existing law as whim, fancy, compassion or malevolence should dictate, even within the limited confines of a single criminal case.’ ” (Quoting Hamilton v. State, 12 Md.App. 91, 98, 277 A.2d 460, 464 (1971) (Moylan, J.), aff'd, 265 Md. 256, 288 A.2d 885 (1972)) (emphasis added) (parentheses and internal quotation marks omitted)); Blackwell v. State, 278 Md. 466, 479, 365 A.2d 545, 553 (1976) (same) (citation omitted).
It may seem inconsistent that: (1) this Court construed Article X, Section 5 and its successors to mean that, in a criminal case, the jury is the judge of the law of the crime; whereas (2) Article X, Section 5’s language that “the jury shall be the judges of law” suggests that its purpose was to supersede the English common law principle that, in a criminal case, the jury only applied the law of the crime to the facts, see Slansky, 192 Md. at 101, 63 A.2d at 601. There is, however, no such inconsistency; Article X, Section 5’s purpose was actually to codify the English common law principle. As noted above, the English common law principle was in effect in 1776. See id. at 101, 63 A.2d at 601. In that year, Maryland received the English common law, see Md. Decl. of Rts. Art. 3 (1776) (“[T]he inhabitants of Maryland are entitled to the common law of England[.]”), and the Constitution of Maryland of 1776 was otherwise silent regarding whether the jury was judge of the law in a criminal case, see Slansky, 192 Md. at 104, 63 A.2d at 603. Thus, despite the “opposing views as to the powers of [the] jury in a criminal case” between 1776 and 1851, Franklin, 12 Md. at 245 (LeGrand, C.J., concurring), Maryland received in 1776 the English common law principle that, in a criminal case, the trial court decided the law, and the jury applied the law to the facts. Indeed, as this Court expressly recognized, Article X, Section 5 of the Constitution of Maryland of 1851 did not supersede the English common law principle; to the contrary, Article X, Section 5 codified it. See id. at 249 (This Court stated that Article X, Section 5 “is merely declaratory, and has not altered the pre-existing law regulating the powers of the [trial] court and [the] jury in criminal cases.” (Emphasis added)); see also In *713 re Glenn, 54 Md. 572, 600 (1880) (Article X, Section 5 is “only declaratory of the pre-existing common law upon the subject.” (Citing Franklin, 12 Md. at 249) (emphasis added)). Thus, Article X, Section 5’s purpose was to secure uniformity of decision in favor of the English common law principle, not against it. See Franklin, 12 Md. at 245 (LeGrand, C.J., concurring) (“[T]o guard in the future against ... conflict, the provision was inserted in the constitution.”).
Given that Article X, Section 5’s purpose was to codify the English common law principle, one may wonder why Article X, Section 5’s drafters chose the words “the jury shall be the judges of law[.]” The reason is simple: Article X, Section 5’s drafters wanted to make clear that, in a criminal case in which a jury trial occurred, the jury, and only the jury, applied the law of the crime to the facts; in other words, the trial court could not apply the law of the crime to the facts by ordering a directed verdict (whether guilty or not guilty), and an appellate court could not could not apply the law of the crime to the facts by reviewing the sufficiency of the evidence. See Newton v. State, 147 Md. 71, 87, 127 A. 123, 130 (1924) (Citing Article X, Section 5’s identical successor, this Court noted that a trial court cannot order “a directed verdict in [a] criminal ease[]”; this Court disapproved of Horning v. District of Columbia, 254 U.S. 135, 139, 41 S.Ct. 53, 65 L.Ed. 185 (1920), in which the Supreme Court held that a trial court did not err in telling a jury: “I cannot tell you, in so many words, to find defendant guilty, but what I say amounts to that.”); Deems v. State, 127 Md. 624, 628, 96 A. 878, 879 (1916) (“The [trial] court is given no authority to decide as to the ... sufficiency of [the] evidence.... It is expressly denied the right to determine a question of that nature by” Article X, Section 5’s identical successor. (Citing Dick, 107 Md. at 17, 68 A. at 288; Jessup, 117 Md. at 123, 83 A. at 142)); Wolf v. State, 143 Md. 489, 493, 122 A. 641, 642-43 (1923) (“Under the Constitution of [Maryland] .... [i]t is ... not within our jurisdiction, as an appellate tribunal, to determine as to the legal sufficiency of the evidence^]” (Citing Weeks v. State, 126 Md. 223, 229, 94 A. 774, 776 (1915); Jessup, 117 Md. at 123, 83 A. at 142)). Of *714 course, it is no longer the law that, in a criminal case in which a jury trial occurs, a court cannot apply the law of the crime to the facts; today, a trial court can enter a judgment of acquittal, and an appellate court can reverse a conviction that is based on insufficient evidence. See Md. Const. Art. XV, Sec. 5 (amended 1950) (“In the trial of all criminal cases, the Jury shall be the Judges of Law, as well as of fact, except that the Court may pass upon the sufficiency of the evidence to sustain a conviction.” (Emphasis added)); Md. Decl. of Rts. Art. 23 (2010) (same).[4] That said, it remains the law that a trial court cannot order a directed verdict of guilty — as Article 23 and its predecessors have contemplated.
In sum, this Court consistently recognized that Article 23 and its predecessors mean that, in a criminal case, the jury is the judge of the law of the crime. Thus, in Stevenson, 289 Md. at 178, 423 A.2d at 564, this Court was correct in noting that, under more than a century’s worth of precedent, in a criminal case, the jury’s “authority is limited to deciding ‘the law of the crime,’ Wheeler[], 42 Md. [at] 570[], or ‘the definition of the crime,’ as well as ‘the legal effect of the evidence before (the jury).’ Beard[ ], 71 Md. [at] 280, 17 A. [at] 1045[ ]. And this Court has consistently interpreted [Article 23 and its predecessors] as restraining the jury’s law[-]deciding power to this limited, albeit important, area.” See also Stevenson, 289 Md. at 177-78, 423 A.2d at 563-64 (This Court quoted Franklin, 12 Md. at 245-46 (LeGrand, C.J., concurring) for the principle that “the jury was not granted, by Article 23 [and its predecessors], the power to decide all matters that may be correctly included under the generic label ‘law.’ ”). One year after Stevenson, in Montgomery, 292 Md. at 87-88, 437 A.2d at 656, in accordance with Stevenson and earlier precedent, this Court correctly reaffirmed that, in a criminal case, the jury’s “authority is limited to deciding the law of the crime, or the definition of the crime, as well as the *715 legal effect of the evidence before the jury.” (Quoting Stevenson, 289 Md. at 178, 423 A.2d at 564) (citations, parentheses, and internal quotation marks omitted).[5]
Twenty-seven years after Montgomery, in Adams, 406 Md. at 256, 958 A.2d at 305, writing for this Court, Judge Harrell correctly and cogently explained that “Stevenson and Montgomery, by their express terms, did not announce new law.” See also Adams, 406 Md. at 257, 958 A.2d at 305 (“[T]he Stevenson court is clear that it did not make new law, but rather it merely clarified what has always been the law in Maryland.” (Citation and internal quotation marks omitted)). Appropriately taking stare decisis into account, Judge Harrell declared: “We shall not here disturb the holdings of Montgomery and Stevenson.” Adams, 406 Md. at 259, 958 A.2d at 307.
In Adams, the dissent disputed that this Court consistently recognized that Article 23 and its predecessors mean that, in a criminal case, the jury is the judge of the law of the crime. Specifically, the dissent accused this Court of “re-draft[ing]” Article 23 in both Stevenson and Adams. Adams, 406 Md. at 301, 958 A.2d at 332 (Eldridge, J., dissenting). The dissent attempted to support its accusation with multiple unpersuasive contentions.
The dissent asserted that none of this Court’s precedent “supports] the proposition that the jury’s right to decide the law in criminal cases is limited to the ‘law of the crime’ and the ‘legal effect of the evidence.’ ” Adams, 406 Md. at 313-14, 958 A.2d at 340 (Eldridge, J., dissenting) (footnote omitted). The dissent attempted to reconcile its assertion with Wheeler, 42 Md. at 570 (“[A]ny instruction given by the [trial cjourt, as to the law of the crime, is but advisory, and in no manner *716 binding upon the jury, except in regard to questions as to what shall be considered as evidence.” (Some emphasis in original)) and Beard, 71 Md. at 280, 17 A. at 1045 (“The [trial court] ... cannot, by any instruction given in a criminal case, bind the jury as to the definition of the crime, or as to the legal effect of the evidence before them.” (Emphasis added)) by myopically fixating on the circumstance that this Court did not use the word “limited” or a similar term. See Adams, 406 Md. at 312 n. 7, 314, 958 A.2d at 339 n. 7, 340 (Eldridge, J., dissenting).
Respectfully, the dissent’s observation was beside the point. In Wheeler, 42 Md. at 570, Beard, 71 Md. at 280, 17 A. at 1045, and voluminous other cases, this Court did not need to use the word “limited” or a similar term in interpreting Article 23 and its predecessors; by definition, if Article 23 and its predecessors mean one thing, then Article 23 and its predecessors do not mean anything else. By way of comparison, generally, where a statute expressly defines a term as “X, Y, or Z,” that statutory definition excludes any meaning other than “X, Y, or Z.” See Potomac Abatement, Inc. v. Sanchez, 424 Md. 701, 712, 37 A.3d 972, 978 (2012) (Under the doctrine of expressio unius est exclusio alterius (“the expression of one thing is the exclusion of another”), “statutory lists are often interpreted as exclusive, so that a court will draw the negative inference that no other items may be added.” (Citation omitted)). Thus, if Article 23 and its predecessors mean that the jury is the judge of the law of the crime, then Article 23 and its predecessors do not mean that the jury is able to make any other legal determination. It follows that this Court did not “announce new law” in Stevenson, 289 Md. at 178, 423 A.2d at 564, by accurately noting that, under more than a century’s worth of precedent, in a criminal case, the jury’s “authority is limited to deciding ‘the law of the crime,’ Wheeler[ ], 42 Md. [at] 570[ ], or ‘the definition of the crime,’ as well as ‘the legal effect of the evidence before (the jury).’ Beard[ ], 71 Md. [at] 280, 17 A. [at] 1045[ ].”
The dissent interpreted snippets of dicta in an attempt to support the proposition that there were only two “exceptions” *717 to Article 23 and its predecessors: the admissibility of a piece of evidence, and the constitutionality of a statute. See Adams, 406 Md. at 312 n. 7, 314, 315-17, 958 A.2d at 339 n. 7, 340, 341-42 (Eldridge, J., dissenting). For - example, the dissent misplaced its reliance on the word “except” in Wheeler, 42 Md. at 570 (“[A]ny instruction given by the [trial e]ourt, as to the law of the crime, is but advisory, and in no manner binding upon the jury, except in regard to questions as to what shall be considered as evidence.” (Emphasis in original)) and the word “only” in Beard, 71 Md. at 280, 17 A. at 1045 (A trial court “can only bind ... the jury as to what evidence shall be considered by” the jury.). See Adams, 406 Md. at 312 n. 7, 958 A.2d at 339 n. 7 (Eldridge, J., dissenting).
The dissent’s strained interpretation of these isolated words is undermined not only by the bevy of cases in which this Court consistently recognized that Article 23 and its predecessors mean that, in a criminal case, the jury is the judge of the law of the crime, see, e.g., Bloomer, 48 Md. at 540 (“[I]t was the duty of the [trial c]ourt to leave it to the jury to say[ ] whether the evidence was sufficient in law and in fact to prove the [crime] charged.”), but also by the circumstance that the admissibility of a piece of evidence and the constitutionality of a statute are far from the only “exceptions” to Article 23 and its predecessors; for example, this Court has long held that Article 23 and its predecessors do not enable the jury to determine: (1) when a statute became effective, see Slymer v. State, 62 Md. 237, 241 (1884); (2) whether the General Assembly has repealed a statute, see Nolan v. State, 157 Md. 332, 340, 146 A. 268, 271 (1929); or (3) whether the trial court has jurisdiction, see Kelly v. State, 151 Md. 87, 98-99, 133 A. 899, 903 (1926).
The dissent asserted that “[t]his Court has never explained what legal issues precisely fall within the phrases ‘law of the crime’ and ‘legal effect of the evidence.’ ” Adams, 406 Md. at 314 n. 8, 958 A.2d at 340 n. 8 (Eldridge, J., dissenting). The dissent was mistaken. In Franklin, 12 Md. at 249, a majority of this Court adopted part of the concurring opinion of Chief Justice LeGrand, who equated “the law of the crime” with “an *718 act defining murder, arson[,] or any other crime,” id. at 246 (LeGrand, C.J., concurring). In Vogel, 163 Md. at 274, 162 A. at 707-08, this Court defined “legal effect of the evidence” as “the effect, in law, of admitted evidence upon the issue of guilt or innoeence[.]” (Citations omitted).
The dissent listed multiple cases in which this Court stated that, if a trial court instructs the jury, the trial court must label the jury instructions as “advisory.” See Adams, 406 Md. at 318-25, 958 A.2d at 342-47 (Eldridge, J., dissenting). For example, the dissent noted that, in Klein v. State, 151 Md. 484, 493, 489, 135 A. 591, 595, 593 (1926), this Court affirmed a conviction where a trial court instructed a jury about the presumption of innocence and the burden of proof beyond a reasonable doubt, but told the jury that the jury instructions were “advisory”; this Court stated: “[T]he [trial] court cannot give [the jury] binding instructions in [criminal] cases.” See Adams, 406 Md. at 320-21, 958 A.2d at 344 (Eldridge, J., dissenting). The dissent failed to mention that this Court’s statement in Klein, 151 Md. at 489, 135 A. at 594, was dicta; the issue of the jury instructions’ propriety was “not ... properly before” this Court because the defendant “fail[ed] ... to point out the specific instructions to which he objected.” Id. at 489, 490, 135 A. at 594. Indeed, in no case, including Klein, has this Court ever held that a trial court did not err in giving “advisory” jury instructions that implicate federal constitutional rights (such as the presumption of innocence).[6] *719 Thus, the dissent’s reliance on Klein and similar cases was misplaced.[7]
Tellingly, the dissent did not even mention, much less address, stare decisis, see Adams, 406 Md. at 299-340, 958 A.2d at 331-56 (Eldridge, J., dissenting); instead, the dissent acted as though it were writing on a blank slate, when in fact Stevenson and Montgomery had already been carved into the law of Maryland.
A mere four years after Adams, in Unger, this Court pummeled stare decisis by overruling Adams and decades’ worth of other case law and reasoning that “Stevenson and Montgomery ... set forth a new interpretation of Article 23[.]” Unger, 427 Md. at 411, 48 A.3d at 258. In Unger, instead of meaningfully attempting to meet the high burden of establishing that Adams was clearly wrong and contrary to established principles, this Court simply adopted parts of the dissent in Adams, see Unger, 427 Md. at 411, 48 A.3d at 258, and essentially copied-and-pasted several passages from the dissent in Adams into Unger, compare Adams, 406 Md. at 312-36, 958 A.2d at 339-53 (Eldridge, J., dissenting) with Unger, 427 Md. at 411-16, 48 A.3d at 258-61. Tellingly, in Unger, without any careful analysis, this Court stated that Stevenson, Montgomery, and Adams were merely “erroneous,” not “clearly wrong and contrary to established princi *720 pies.” Unger, 427 Md. at 417, 48 A.3d at 261, 262. Thus, the Majority is simply wrong in stating that “[t]he Unger Court, in reaching the legal conclusions that it did, applied the very principles of, and exceptions to, the doctrine of stare decisis, [on which] the State relies ... in seeking a return to ... Stevenson, Montgomery, and Adams[.]” Maj. Op. at 701, 122 A.3d at 299. Indeed, as Judge Harrell perceptively noted, this Court in Unger, much like the dissent in Adams, acted as though it were addressing “an open question requiring an answer, which, based on our holding in Adams, it clearly is not.” Unger, 427 Md. at 429, 48 A.3d at 269 (Harrell, J., dissenting) (citation omitted).
The dissent in Adams was clearly wrong and contrary to established principles in disputing that this Court consistently recognized that Article 23 and its predecessors mean that, in a criminal case, the jury is the judge of the law of the crime. And, in Unger, this Court was even more clearly wrong in overruling Adams. The only correct result is to overrule Unger and restore Adams, Montgomery, and Stevenson to their rightful place as good law consistent with more than a century’s worth of this Court’s precedent.
Regrettably, this Court’s precedent was not the only thing that Unger disturbed eons after it was thought to be settled. Unger opened the floodgates for individuals to exhume decades-old convictions for murder, rape, and other serious crimes. As a result, victims and their family members have been forced to relive traumatic experiences long after they thought that they had finally achieved closure. Additionally, dozens of individuals have been released in Unger’s wake.[8]
*721 Despite Unger’s consequences, the Majority refrains from overruling it, ostensibly based on good intentions and the honest belief that the Majority’s decision bolsters stare decisis. See Maj. Op. at 695, 699-702, 122 A.3d at 295, 298-300. In actuality, however, the Majority condones the blow to stare decisis that was brought about in Unger, and undermines even further “the evenhanded, predictable, and consistent development of legal principles, ... reliance on judicial decisions, and ... the actual and perceived integrity of the judicial process.” Thompson v. UBS Fin. Servs., Inc., 443 Md. 47, 58, 115 A.3d 125, 131 (2015) (citation and internal quotation marks omitted). The Majority’s decision will injure not only all of this Court’s precedent, but also the public by permitting the reopening of serious criminal cases on unsound legal grounds.[9]
In short, although the Majority purports to avoid “generating]” “uncertainty,” Maj. Op. at 695, 122 A.3d at 295, the Majority actually cultivates a lack of consistency in case law by sanctioning the undermining of the doctrine of stare decisis that was perpetrated in Unger.
For the above reasons, respectfully, I dissent.

. "Under stare decisis, absent extremely narrow exceptions, an appellate court does not overrule its precedent. Stare decisis promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.” Thompson v. UBS Fin. Servs., Inc., 443 Md. 47, 57-58, 115 A.3d 125, 131 (2015) (citations and internal quotation marks omitted).

. "[A]n appellate court need not adhere to stare decisis where the appellate court's precedent was clearly wrong and contrary to established principles.” Thompson v. UBS Fin. Servs., Inc., 443 Md. 47, 58 n. 5, 115 A.3d 125, 131 n. 5 (2015) (citation and internal quotation marks omitted).

. Whether this Court "announced new law” in Stevenson or Montgomery determines whether a petitioner for postconviction relief waives a challenge to an "advisory” jury instruction by failing to object to the “advisory” jury instruction in a prior proceeding. See Md.Code Ann., Crim. Proc. (2001, 2008 Repl. Vol.) (“CP”) § 7-106(b)(1)(i) ("[A]n allegation of error is waived when a petitioner could have made but intelligently and knowingly failed to make the allegation: 1. before trial; 2. at trial; 3. on direct appeal, whether or not the petitioner took an appeal; 4. in an application for leave to appeal a conviction based on a guilty plea; 5. in a habeas corpus or coram nobis proceeding began by the petitioner; 6. in a prior petition under this subtitle; or 7. in any other proceeding that the petitioner began.” (Paragraph breaks omitted)); CP § 7-106(c)(2) ("[A]n allegation of error may not be considered to have been ... waived ... if a court whose decisions are binding on the lower courts of the State holds that: (i) the Constitution of the United States or the Maryland Constitution imposes on State criminal proceedings a procedural or substantive standard not previously recognized; and (ii) the standard is intended to be applied retrospectively and would thereby affect the validity of the petitioner's conviction or sentence.” (Emphasis added) (paragraph breaks omitted)).

. In 1978, through a constitutional amendment, Article XV, Section 5 was recodified as Article 23 of the Maryland Declaration of Rights. See 1977 Md. Laws 2743-49 (Ch. 681, H.B. 463).

. Tellingly, the dissent in Stevenson, 289 Md. at 189-204, 423 A.2d at 570-77 (Eldridge, J., dissenting), and the concurrence in Montgomery, 292 Md. at 96, 437 A.2d at 660 (Eldridge, J., concurring) failed to dispute that this Court consistently recognized that Article 23 and its predecessors mean that, in a criminal case, the jury is the judge of the law of the crime.

. It is true that Maryland Rule 757b (1963 Repl.Vol.) stated: "The court shall in every case in which instructions are given to the jury, instruct the jury that they are the judges of the law and that the court’s instructions are advisory only.” However, Maryland Rule 757b does not necessarily stand for the proposition that this Court condoned giving "advisory” jury instructions that implicated federal constitutional rights. This Court rejected facial challenges to Article 23 and its predecessors based on federal constitutional rights in Slansky, 192 Md. at 99, 111, 63 A.2d at 601, 606, Giles v. State, 229 Md. 370, 382, 183 A.2d 359, 364 (1962), and Stevenson, 289 Md. at 189, 423 A.2d at 570, but this Court did not consider an as-applied challenge to Article 23 and its predecessors based on federal constitutional rights until Montgomery, 292 Md. at 89-90, 437 A.2d at 657 (”[I]t was error [for a trial court] to instruct [a] jury that [its] instructions were advisory and that *719 the jury could pay absolutely no attention to [its] instructions.”). In other words, until Montgomery, this Court never addressed whether a trial court erred in giving ‘‘advisory” jury instructions that implicated federal constitutional rights; and, in no case has this Court ever condoned giving “advisory" jury instructions that implicated federal constitutional rights.

. As another example, the dissent noted that, in Bruce v. State, 218 Md. 87, 98, 145 A.2d 428, 434 (1958), this Court stated: “[A]s [a trial] court properly advised [a] jury, the defendant is ‘presumed to be innocent until proven guilty beyond a reasonable doubt, and that presumption attends him throughout the trial until overcome by proof establishing his guilt beyond a reasonable doubt and to a moral certainty.’ ” See Adams, 406 Md. at 320, 958 A.2d at 344 (Eldridge, J., dissenting). This Court's statement in Bruce was dicta; at issue was the propriety of jury instructions regarding the difference between murder and manslaughter, not jury instructions that implicated federal constitutional rights.

. Peter Sutro Waine, Respondent, and multiple amici note that, if this Court overrules Unger, some individuals will have benefitted from Unger, while others will have not. I am unpersuaded by the contention that this circumstance would create undue disparity. Because Unger was clearly wrong and contrary to established principles, those who have been released from incarceration were not entitled to relief in the first place. Now is the time to correct the error that is Unger; it is better to close the floodgates late than to never close them at all.

. As an aside, although I strongly disagree with the Majority’s decision to reaffirm Unger, if Unger remains the law, I agree with the Majority that, here, the Circuit Court for Harford County did not abuse its discretion in reopening the postconviction proceeding based on a challenge to "advisory” jury instructions. See Maj. Op. at 702, 122 A.3d at 300. I also agree with the Majority that a challenge to "advisory” jury instructions is not controlled by the "reasonable likelihood” test. See Maj. Op. at 703, 122 A.3d at 300.